21 Cal.App.4th 358 (1993)
26 Cal. Rptr.2d 161
In re BARRY W., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN'S SERVICES, Plaintiff and Respondent,
v.
DONALD W., Defendant and Appellant.
Docket No. B064161.
Court of Appeals of California, Second District, Division Four.
December 23, 1993.
*360 COUNSEL
Martin A. Becker, under appointment by the Court of Appeal, for Defendant and Appellant.
De Witt W. Clinton, County Counsel, Jill Regal and Jeanette Malouf for Plaintiff and Respondent.
[Opinion certified for partial publication.[*]]
OPINION
VOGEL (C.S.), J. 

I

INTRODUCTION
Donald W. appeals from orders of the juvenile court adjudging his son, Barry W., a dependent of the court and issuing guardianship letters pursuant *361 to Welfare and Institutions Code section 300 et seq. (All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.) In the nonpublished portion of this opinion, we reject appellant's multiple claims of error directed at the September 18, 1991, jurisdictional and dispositional hearing. In the published portion of this opinion, we reject appellant's contention that the trial court's failure to honor his request to be present at the January 15, 1992, section 326.26 hearing compels reversal of the trial court's order appointing guardians for his son, Barry W.

II

FACTUAL AND PROCEDURAL SUMMARY
We provide a general summary, reserving specific details for our discussion of appellant's arguments.
On January 17, 1990, respondent filed a petition under section 300, subdivisions (a), (b), (c), (e), (g), and (i) alleging that appellant had struck his six-month-old son, Barry W., on two occasions, inflicting multiple injuries including eight fractured ribs and a skull fracture which resulted in serious physical harm to the minor (count I); that appellant and his wife, Dorrie W., had failed to obtain necessary medical treatment for Barry W. (count II); that the minor had been periodically exposed to violent confrontations between his parents (count III); that minor's parents have demonstrated emotional problems and are incapable of providing for his needs (count IV); and that appellant was incarcerated and unable to arrange for care of the minor (count V). The petition contained a warning that respondent might seek an order pursuant to section 361.5 that no reunification services be provided, which would result in permanency planning through termination of parental rights and adoption, guardianship, or long-term foster care. Barry W. was hospitalized and appellant was incarcerated when the petition was filed.
On January 29, 1990, appellant was arraigned on the petition and counsel was appointed to represent him.[1] He was given a written advisement of his rights, and he denied the allegations in the petition. The trial court ordered Barry W. to be released to his paternal grandmother when medically ready.
Appellant was not present at the adjudication hearing set for March 26, 1990, because he was not removed from prison. He appeared at a hearing on June 6, 1990. The minute order for that date reflects that he withdrew his *362 consent to a no contest plea and that previous amendments to the petition were deleted. The jurisdiction and disposition adjudications were continued numerous times over the following year to secure appellant's presence.
During this period, Barry W. was placed in the Bohlander foster home. The trial court gave permission for his natural mother to live in the foster home and for the foster parents to move to Northern California.
The jurisdictional and dispositional hearing was held on September 18, 1991. Appellant was present, in custody. At the outset of the hearing, appellant's counsel moved to be relieved based on appellant's request that she no longer represent him. Appellant confirmed that he wanted to represent himself. The trial court granted his motion.
Respondent called the social worker as a witness and offered her report as evidence in support of the petition. The report reflected that Barry W. repeatedly had suffered severe physical abuse at the hands of appellant. As a result, Barry is now blind, suffers from hydrocephaly which required three shunts from his brain, and is grossly developmentally delayed. Appellant was given an opportunity to cross-examine the social worker. He also was allowed to make a statement presenting his objections to giving up his son. Appellant acknowledged that he had problems with drugs and alcohol and that he would be incarcerated until 1993.
The trial court sustained the petition as amended, and declared the minor to be a dependent of the court under section 300, subdivisions (a), (b), (e), and (i). Under section 361.5, the trial court ordered that there be no reunification services for the father because more than 18 months had elapsed since the minor's detention, because the father was going to be incarcerated for another 2 years, and because of the extreme violence by appellant, which caused the minor's injuries. The trial court scheduled a section 366.26 hearing for January 15, 1992, to consider the Bohlanders' request to be appointed legal guardians of Barry W.
On January 10, 1992, appellant filed a purported notice of appeal by letter written from the correctional facility where he was incarcerated. He stated that he was appealing "the entire order," that he did not want to give legal guardianship to anyone, and that he wanted to regain parental rights to the care and custody of the minor. Additionally, he wrote a letter to the trial court which was received on January 10, 1992. He reiterated his objection to the Bohlanders being appointed guardians for Barry W. and asked that another court date be set and that transportation be provided for him to attend that hearing.
*363 Appellant did not appear at the January 15, 1992, hearing. At first, the trial court ruled that at the September 18, 1991, jurisdictional and dispositional hearing, appellant had waived his right to appear at the section 366.26 hearing. However, after being handed and reviewing the letter in which appellant had requested transportation to the court, the court noted that there was no demonstrable need for appellant's presence so that the hearing would therefore be held without him.
Barry W.'s mother appeared and favored granting the guardianship of the Bohlanders on the condition that the court allow her to continue to live with them. Based on previous reports, examination of the Bohlanders, and other evidence, the trial court issued letters of legal guardianship without permanently terminating parental rights. The court further ordered that there be no further reunification services. Termination of parental rights was stayed pending determination of appellant's appeal from the court's dispositional order.

III

DISCUSSION[*]
.... .... .... .... .... .... .... .

IV

DISCUSSION

Section 366.26 Hearing
While appellant's notice of appeal was filed before the section 366.26 hearing, we deem the premature notice to have been filed upon the entry of the January 15, 1992, order. (Cf. In re Ricky H. (1992) 10 Cal. App.4th 552, 558-559 [12 Cal. Rptr.2d 578].) His contention vis-a-vis the hearing is therefore cognizable on this appeal.
While in court on September 18, 1991, appellant received notice that the next hearing would consider the Bohlanders' request to be appointed guardians of Barry W.[4] The trial court asked whether appellant intended to appear on January 15. Appellant replied that he did not think he would attend. At another point, he stated that he would let the court know whether he wished to be present for the section 366.26 hearing. On January 10, 1992, five days *364 before the section 366.26 hearing, the trial court received a letter from appellant stating: "Please set another court date and send LEGAL TRANSPORTATION PAPER WORK IMMEDIATLY [sic] and I Mr. Donald [W.] will then APPEAR IN COURT. [sic] on that  date."
Appellant argues that he was denied his right to appear at the section 366.26 hearing on January 15. That, he contends, deprived him of the opportunity to "produce any affirmative evidence on his behalf of his present status and future prospects, which could have influenced the court to implement a plan of long term foster care rather than guardianship.... Appellant was denied the opportunity to present any information regarding his progress while incarcerated, including any counseling or therapy provided, and any additional information regarding the potential for him to reunify with his son." (1a) We reject appellant's contention and conclude that his presence at the January 15 hearing was not mandated.
The purpose of a section 366.26 hearing is "to begin the task of finding the child a permanent alternative family placement" (Cynthia D. v. Superior Court (1993) 5 Cal.4th 242, 253 [19 Cal. Rptr.2d 698, 851 P.2d 1307], fn. omitted) after a finding of parental unfitness has been made by the trial court. (Ibid.) The statute gives the court several options to follow in regard to placing the child. The court can: (1) permanently sever the parental relationship and order the child be placed for adoption; (2) without permanently severing the parental relationship, identify adoption as the goal and commence efforts to find an appropriate adoptive family; (3) without permanently severing the parental relationship, appoint a guardian for the child; (4) or place the child in long-term foster care. Thus, severance of the parental relationship is only one of several options the court can choose to implement at a section 366.26 hearing.
*365 As appellant relies upon Penal Code section 2625[5] to support his contention that the January 15, 1992, order appointing a guardian for Barry W. must be reversed, we first review the statute's history.
*366 As originally enacted in 1974, Penal Code section 2625 provided that the court "shall" issue an order for an incarcerated parent's presence upon receipt of a demand only in an action brought under Civil Code section 232 to terminate parental rights.[6] (Stats. 1974, ch. 1462, § 1.) In any other action adjudicating parental rights, the court was given discretion to order the parent's presence. Significantly, the statute contained no provision either requiring notice be given to the prisoner about the action to terminate parental rights or precluding the trial court from proceeding if it did not honor a prisoner's demand to be present.
The 1976 amendment to Penal Code section 2625 expanded it to its present multiparagraphed form, including the requirement of giving notice. (Stats. 1976, ch. 1376, § 2.) The first paragraph in the 1976 version limited the notice requirement to a Civil Code section 232 action to terminate parental rights and an action under former section 600 of the Welfare and Institutions Code to adjudicate a minor a dependent of the court. The fourth paragraph of the 1976 version provided that in either of those two specifically identified actions, the court could not proceed without the prisoner if a demand had been received. The fifth paragraph granted the trial court discretion to order the prisoner's presence "[i]n any other action in which a prisoner's parental or marital rights are subject to adjudication...."
The 1983 amendment replaced the reference to section 600 of the Welfare and Institutions Code with a reference to section 300 of that code. (Stats. 1983, ch. 301, § 1.)
The 1991 amendment added the present references to section 366.26 in the first and fourth paragraphs. (Stats. 1991, ch. 820, § 1 (Sen. Bill No. 475).) Thus, the first paragraph of the statute now contains the following introduction setting forth the actions to which certain provisions will apply: "In any action brought under Section 232 of the Civil Code, and Section 366.26 of the Welfare and Institutions Code, where the action seeks to terminate the parental rights of any prisoner or any action brought under Section 300 of the Welfare and Institutions Code, where the action seeks to adjudicate the child of a prisoner a dependent child of the court." (Italics added.) The statute then provides that in those situations, the court shall notify the prisoner of the proposed action. The fourth paragraph of the statute states that upon receipt from the prisoner of a statement expressing a desire to be present at the hearing, "the court shall issue an order" for the prisoner's *367 presence. The fourth paragraph concludes: "No proceeding may be held under Section 232 of the Civil Code or Section 366.26 of the Welfare and Institutions Code and no petition to adjudge the child of a prisoner a dependent child of the court ... may be adjudicated without the physical presence of the prisoner or the prisoner's attorney...." Thus, the dispositive issue is as follows: Given that the first paragraph of the statute limited its reach to section 366.26 proceedings involving the termination of parental rights, is the reference in the fourth paragraph precluding the court from proceeding in the absence of the prisoner likewise limited to a section 366.26 action to terminate the prisoner's parental rights? For the reasons to be set forth, we answer that question in the affirmative.
The little legislative history available on the statute is not helpful. The Legislative Counsel's Digest comments, which appear at the beginning of Senate Bill No. 475, the version of the law enacted by the Legislature, state: "Existing law requires notice to a prisoner and, upon request of the prisoner, temporary removal of the prisoner from the institution where he or she is confined for production before the court in which parental rights of the prisoner are being adjudicated, pursuant to a general provision governing the termination of parental rights or where an action seeks to adjudge the child a dependent of the juvenile court. [¶] This bill would provide for required notice to, and, upon request, temporary removal of, a prisoner in cases where parental rights are terminated or a legal guardianship is established for a minor who is adjudged a dependent child of the juvenile court." (Italics added.)
At first blush, the underscored portion of the comments would appear to provide support for appellant's position that his attendance was mandated. However, closer scrutiny discloses that any reliance thereon is misplaced. (2) "Although a legislative counsel's digest may be helpful in interpreting an ambiguous statute, it is not the law." (In re Marriage of Stephens. (1984) 156 Cal. App.3d 909, 916 [203 Cal. Rptr. 331].) Thus, at most, the Legislative Counsel's interpretation of a statute is to be accorded "great weight." (California Assn. of Psychology Providers v. Rank (1990) 51 Cal.3d 1, 17 [270 Cal. Rptr. 796, 793 P.2d 2]; Franklin v. Appel (1992) 8 Cal. App.4th 875, 890 [10 Cal. Rptr.2d 759].) However, that latter principle has no application when the Legislative Counsel's comments directly conflict with the statute; in that case, the comments are to be disregarded. (Kern River Public Access Com. v. City of Bakersfield (1985) 170 Cal. App.3d 1205, 1222 [217 Cal. Rptr. 125].)
(1b) In this case, a conflict exists between the digest comments and the statute. The comments state that the 1991 amendment will provide for notice *368 to incarcerated parents of a proceeding to establish a guardianship for a child who has been adjudged a dependent of the court. However, Penal Code section 2625, as amended in 1991, contains no such provision. The amendment only added a section 366.26 action to terminate parental rights to the category of cases in which a court was required to give notice to the prisoner. Given this inaccuracy in the Legislative Counsel's characterization of the bill, we conclude that the digest is not helpful in construing the effect of the 1991 amendment on the issues in this case. (See Clark v. Workers' Comp. Appeals Bd. (1991) 230 Cal. App.3d 684, 695 [281 Cal. Rptr. 485], and California Teachers' Assn. v. Governing Board (1983) 141 Cal. App.3d 606, 614 [190 Cal. Rptr. 453].)
Sound policy considerations support the analysis that an incarcerated parent only has a right to attend a section 366.26 hearing if termination of parental rights is at issue in the hearing. In proceedings to adjudicate the child a dependent of the court under section 300, to terminate parental rights under section 366.26, or to free a child from parental control and custody under Civil Code section 232, significant interests of the parent are at stake. Thus, in those situations, it is reasonable to require the trial court to arrange for the incarcerated parent's attendance if the parent manifests that intent. On the other hand, in a section 366.26 proceeding either to appoint a guardian or to place the child in a foster home, the parent's loss is much less significant  the child has already been adjudicated a dependent of the court at a proceeding the incarcerated parent had an absolute right to attend but the parental relationship is still extant and cannot be terminated until another proceeding is conducted which the incarcerated parent has an absolute right to attend.
The only logical reason to mandate notice to prisoners is to afford them an opportunity to make a demand to attend the noticed proceeding. Because the first paragraph of Penal Code section 2625 only requires notice when the proceeding "seeks to terminate parental rights of any prisoner [or] seeks to adjudicate the child of a prisoner a dependent child of the court," it follows that the mandatory duty to produce the prisoner, found in the fourth paragraph of Penal Code section 2625, applies only in those limited circumstances. It would be incongruous to construe the statute to first limit the actions in which notice is required but then to broaden the category of actions in which the trial court is mandated to honor an incarcerated parent's demand to be present. Stated another way, the requirement of giving notice implements the policy of ensuring that an incarcerated parent has knowledge of pending actions which significantly impact the parental relationship so *369 that the parent is therefore able to make a demand to be present at those statutorily enumerated hearings.[7]
Thus, we conclude that the reference to a section 366.26 action in the fourth paragraph of the present version of Penal Code section 2625 should be interpreted to be modified by the limitation in the first paragraph  a section 366.26 action to terminate parental rights. If it is not so construed, the limitation in the first paragraph would essentially have no purpose or effect. That interpretation would violate the principle that a statute must be construed as a whole, and effect be given to every phrase so that no part will be found to be useless or meaningless. (See, e.g., People v. Cheatham (1975) 50 Cal. App.3d 592, 595 [123 Cal. Rptr. 361].)
Our conclusion that appellant did not have an absolute right to attend a hearing whose sole purpose was to decide whether guardians should be appointed for his son, Barry W., is fortified by examining the language in Penal Code section 2625 which follows the provisions just analyzed. The fifth paragraph of the statute begins by stating that it applies "[i]n any other action in which a prisoner's parental or marital rights are subject to adjudication." In those situations, the superior court "may" issue an order requiring the production of the prisoner. This provision is in sharp contrast to the fourth paragraph of the statute where issuance of an order for the prisoner's presence is couched in the mandatory "shall."
Our analysis gives meaning to the fifth paragraph which grants the trial court discretion to order the production of an incarcerated parent in "any other action in which a prisoner's parental ... rights are subject to adjudication" because it helps define what those other actions are  section 366.26 proceedings which do not involve severance of the parental relationship. Appellant's focus on the language in the fourth paragraph prohibiting the court from proceeding without the prisoner in any section 366.26 proceeding would, in large part, render the fifth paragraph a nullity because an incarcerated parent would be given an absolute right to attend any section 366.26 proceeding.
We therefore conclude that the fifth paragraph of the statute vests the trial court with discretion to determine whether it shall call for the prisoner's *370 presence when the case does not involve termination of parental rights or a declaration of dependency. Accordingly, it follows that such a case may proceed without attendance by the prisoner-parent. This is that type of case because the issue at the January 15, 1992, hearing was limited to the appointment of a guardian. As already noted, the court had explained this to appellant at the close of the September 18, 1991, jurisdictional and dispositional hearing (see fn. 4, ante) and, at the end of the January 15, 1992, hearing, the court stayed any proceedings to terminate parental rights pending the outcome of this appeal.[8]
(3) Having concluded that in the present case the trial court did not have a mandatory duty to order appellant's presence at the January 15, 1992, hearing, we turn to the issue of what is the legal effect of its decision to not do so. At the beginning of the hearing, the court expressed its belief that at the September 18, 1991, jurisdictional and dispositional hearing, appellant had waived his right to appear that day. However, the court was then handed the letter appellant had sent in which he protested the proposed guardianship, stated his desire to appear in court, and asked for transportation to the proceeding. The court stated: "These are very tough cases because I have to say that clearly [appellant] is a man with serious emotional problems, very, very serious emotional problems, and he's presented no real evidence to me as to why Mr. and Mrs. Bohlander can't be the guardians of the child, and further, there's no real indication that he's ever going to achieve the kind of stability that would permit me or anyone else to place, safely place Barry in his custody. [¶] I want to remind everybody through the record, that this was a very, very serious physical abuse, very serious physical abuse." (Italics added.) After an unreported proceeding was conducted, the court announced: "The court is going to proceed today with this hearing."
The record demonstrates that the trial court did not abuse its discretion in either not acceding to appellant's request to be present that day or not continuing the hearing to permit transportation arrangements to be made. The court, having presided over the earlier hearings, commented that appellant had inflicted serious bodily injury upon his son, Barry W. In regard to appellant's letter, the court noted that appellant had not presented any evidence as to why the Bohlanders should not be appointed guardians of Barry W. And after questioning the Bohlanders under oath, noting that Barry W.'s mother consented to the proposed guardianship because she would be able to live with the Bohlanders and her son, and stating that it had reviewed the reports previously prepared in the case, the court held: "Court's going to *371 find then that it is in the child's best interest that the Bohlanders be appointed guardians...." Given all of these circumstances, the trial court's implicit determination that little, if anything, would be gained by appellant's presence at the hearing was not error.
In sum, Penal Code section 2625 did not grant appellant an absolute right to attend the January 15, 1992, hearing. The decision to grant his request to attend rested in the trial court's discretion. As the record indicates, the trial court did not abuse its discretion in denying appellant's request, and there is no need to reverse for a new hearing.

V

DISPOSITION
The September 18, 1991, and January 15, 1992, orders of the trial court are affirmed.
Soven, J.,[*] concurred.
EPSTEIN, Acting P.J., Concurring and Dissenting.
I fully concur in the majority opinion in this case, except for its conclusion that the appellant was not entitled to appear at the Welfare and Institutions Code section 366.26 hearing. As to that part of the opinion, I respectfully and reluctantly dissent.
It is not necessary to recite the history or full text of Penal Code section 2625, upon which the statutory right to appear is founded; these matters are set forth in the majority opinion. To me, the critical language appears in the fourth paragraph. Its command is clear and unlimited: "No proceeding may be held under Section 232 of the Civil Code or Section 366.26 of the Welfare and Institutions Code and no petition to adjudge the child of a prisoner a dependent child of the court pursuant to subdivision (a), (b), (c), (d), (e), (f), (i) or (j) of Section 300" of that code shall be made, without the presence of the prisoner-parent or counsel, unless a written waiver of presence as described in the statute has been received. (Italics added.) The hearing in question was a section 366.26 hearing; the prisoner-parent was not present; and there was no statutory waiver of his presence. (In fact, he had specifically asked in writing to be present.) Unless the Legislature were to add a statement that "we really mean it," it is difficult to see how it could have spoken in clearer terms.
The majority takes the view that the first paragraph of Penal Code section 2625 limits all that follows to Civil Code section 232 actions, dependency *372 adjudication proceedings under Welfare and Institutions Code section 300, and Welfare and Institutions Code section 366.26 actions that seek to terminate the parental rights of the prisoner. The first paragraph requires notice to the prisoner-parent in those cases. If the Legislature intended the broad language of the fourth paragraph to be limited in this way, it chose a particularly inartful way to express it. The right-to-presence provision is stated without qualification or reference back to the initial paragraph. Further, while the first paragraph refers to all section 300 adjudicatory hearings, the fourth paragraph specifically refers to eight of the ten subdivisions of that statute, omitting two.
I said that my dissent is reluctant. That is because, in this case, it is difficult to foresee any other outcome than the one adjudicated by the trial court. But the Legislature has determined that a parent, even if incarcerated, has a right to notice and hearing before a Welfare and Institutions Code section 366.26 adjudication is made. There may well be cases where the outcome is not as clear as it seems to be in this case. But the effect of the majority opinion is to foreclose the right to hearing in all section 366.26 cases unless a termination of parental rights is sought. I cannot join it in that decision.
NOTES
[*] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication only as to parts I, II, IV, and V.
[1] The court reporter's notes of this hearing were inadvertently destroyed. This summary is taken from the trial court's minute order.
[*] See footnote, ante, page 358.
[4] At the close of the September 18, 1991, hearing, the following colloquy occurred between the court and Donald W.:

"The Court: ... There will be another hearing in January. Do you want to come to that hearing? Now, that's going to be the hearing that is going to free  strike that. That's going to be the hearing in which the current caretakers are going to be requesting guardianship.
"[Donald W.]: So what you're  you're not going  I mean, that's not referring to adoption or anything like that?
"The Court: No, it's not. Guardianship is always something that can be reconsidered by the court.
"[Donald W.]: Okay, and I will not or cannot participate in this? What about his mother, I mean?
"The Court: Well, she has indicated through her lawyer that she wants these foster parents to adopt Barry  I mean, to take guardianship of him, because she feels they can take better care of him than she can. So I'll tell you what. You don't have to decide today. I'll order an in and out. If you don't want to come, you just write us a letter and tell us you don't want to come, okay?"
[5] Penal Code section 2625 provides: "In any action brought under Section 232 of the Civil Code, and Section 366.26 of the Welfare and Institutions Code, where the action seeks to terminate the parental rights of any prisoner or any action brought under Section 300 of the Welfare and Institutions Code, where the action seeks to adjudicate the child of a prisoner a dependent child of the court, the superior court of the county in which the action is pending, or a judge thereof, shall order notice of any court proceeding regarding the action transmitted to the prisoner.

"For the purposes of this section only, the term `prisoner' includes any individual in custody in a state prison, in the California Rehabilitation Center, or a county jail, or who is a ward of the Department of the Youth Authority or who, upon a verdict or finding that the individual was insane at the time of committing an offense, or mentally incompetent to be tried or adjudged to punishment, is confined in a state hospital for the care and treatment of the mentally disordered or in any other public or private treatment facility.
"Service of notice shall be made pursuant to Section 235 of the Civil Code or Section 337 or 366.23 of the Welfare and Institutions Code, as appropriate.
"Upon receipt by the court of a statement from the prisoner or his or her attorney indicating the prisoner's desire to be present during the court's proceedings, the court shall issue an order for the temporary removal of the prisoner from the institution, and for the prisoner's production before the court. No proceeding may be held under Section 232 of the Civil Code or Section 366.26 of the Welfare and Institutions Code and no petition to adjudge the child of a prisoner a dependent child of the court pursuant to subdivision (a), (b), (c), (d), (e), (f), (i), or (j) of Section 300 of the Welfare and Institutions Code may be adjudicated without the physical presence of the prisoner or the prisoner's attorney, unless the court has before it a knowing waiver of the right of physical presence signed by the prisoner or an affidavit signed by the warden, superintendent or other person in charge of the institution, or his or her designated representative stating that the prisoner has, by express statement or action, indicated an intent not to appear at the proceeding.
"In any other action in which a prisoner's parental or marital rights are subject to adjudication, an order for the prisoner's temporary removal from the institution and for the prisoner's production before the court may be made by the superior court of the county in which the action is pending, or by a judge thereof. A copy of the order shall be transmitted to the warden, superintendent, or other person in charge of the institution not less than 48 hours before the order is to be executed. The order shall be executed by the sheriff of the county in which it shall be made, whose duty it shall be to bring the prisoner before the proper court, to keep the prisoner safely, and when the prisoner's presence is no longer required, to return the prisoner to the institution from which he or she was taken; the expense of executing the order shall be a proper charge against and shall be paid by, the county in which the order shall be made.
"The order shall be to the following effect:
"County of ____ (as the case may be).
"The people of the State of California to the warden of ____:
"An order having been made this day by me, that A.B. be produced in this court as a party in the case of ____, you are commanded to deliver A.B. into the custody of ____ for the purpose of (recite purposes).
"Dated this ____ day of ____, 19__.
"When a prisoner is removed from the institution pursuant to this section, the prisoner shall remain in the constructive custody of the warden, superintendent, or other person in charge of the institution."
[6] Civil Code section 232 sets forth the procedures by which a child may be declared free from parental custody and control when the child is not a dependent child of the court.
[7] This analysis is consistent with the following conclusion made in a noted family law treatise. "A removal order on the request of the prisoner [made pursuant to Penal Code section 2625] is mandatory only in regard to Section 232 proceedings (and juvenile court proceedings under Welfare and Institutions Code Sections 300 (dependency) and 366.26 (termination of parental rights)). In any other action in which a prisoner's parental rights are subject to adjudication, an order for the prisoner's temporary removal from the institution and for the prisoner's production before the court may be made by the court." (4 Markey, Cal. Family Law Practice and Procedure (1993) Parental Rights Termination, § 71.82A[1], pp. 71-78 to 71-79; original italics, fn. omitted.)
[8] At oral argument, respondent conceded that were termination proceedings initiated, Donald W. would have an absolute right to attend that hearing if he so requested. Respondent's position is consistent with our interpretation of Penal Code section 2625.
[*] Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.