234 Cal.App.3d 1413 (1991)
286 Cal. Rptr. 239
In re MELINDA J., a Person Coming Under the Juvenile Court Law.
ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Respondent,
v.
KIM J., Defendant and Appellant.
Docket No. G010299.
Court of Appeals of California, Fourth District, Division Three.
October 4, 1991.
*1415 COUNSEL
Janette Freeman Cochran, under appointments by the Court of Appeal, for Defendant and Appellant.
Terry C. Andrus, County Counsel, and Lisa Peskay Malmsten, Assistant County Counsel, for Plaintiff and Respondent.
Harold LaFlamme and Karen Cianfrani, under appointments by the Court of Appeal, for the Minor.
[Opinion certified for partial publication.[1]]
OPINION
WALLIN, J.
Kim J. appeals the judgment under Welfare and Institutions Code section 366.26[2] terminating her parental rights to her daughter, Melinda. In the published portion of this opinion, we reject her contention that the Orange County Social Services Agency (SSA) did not comply with statutory or due process notice requirements. The discussion rejecting her claims that the court failed to consider her current circumstances when terminating her parental rights and failed to appoint counsel for the grandparents is not published.
Melinda J. was born in July 1987 to Kim J., a 27-year-old single mother who supported her heroin addiction by engaging in prostitution and illegal drug sales. In December 1988, Kim left Melinda with a casual acquaintance and never returned. After seven weeks, the acquaintance turned the child over to Kim's father and stepmother (the grandparents); unable to locate Kim, they contacted the SSA for help.[3]
*1416 A petition was filed on March 21, 1989, under section 300, subdivision (b), alleging Kim had left Melinda and never returned and that she had a history of drug abuse and related arrests. After several continuances, the jurisdictional and dispositional hearing was set for May 15. On April 27, the SSA sent a certified letter to Kim's last known address, contacted the post office to determine a forwarding address, and mailed a letter to the grandparents asking for help in locating Kim. On May 8, the SSA searched its own index and the indices of the Orange County Probation Department, the Orange County District Attorney Family Support Division, the Orange County Sheriff-Coroner, and the California Department of Motor Vehicles. These sources yielded several more addresses, to which the SSA sent additional certified letters with copies of the petition on May 9. The records of the Orange County Jail showed Kim was not in custody.
Also on May 9, the SSA contacted another branch of the post office for a forwarding address, called Kim's last known telephone number, attempted to find a current telephone number through directory assistance, and searched the central incarceration index. None of these methods was successful.
On May 15, 1989, Kim failed to appear and her default was entered. The court found by a preponderance of the evidence that Melinda was in need of protection under section 300, subdivision (b) and by clear and convincing evidence that she came under section 300, subdivision (b)(1). Melinda was declared a dependent child of the juvenile court and released to the custody of her grandparents. The grandparents requested standing, which was granted by stipulation. The six-month review hearing was set for November 15.
Kim surfaced when she was jailed in Orange County on drug charges on May 18. She remained there approximately four months; during that time, the caseworker visited her three times, informed her of her responsibilities under the service plan, and provided her with counseling and shelter referrals for use upon her September 30 release. Although Kim promised to keep in touch with the SSA after her release, she failed to do so and also failed to visit Melinda. Consequently, her whereabouts were once again unknown as the six-month review hearing date approached.
The SSA repeated its former efforts to give Kim notice of the hearing, sending certified letters to all possible addresses on November 6. The case-worker also spoke to the grandmother, who said Kim had been told about the hearing while in jail. On November 10, Kim called the caseworker for help with her attempt to withdraw from her heroin addiction, saying she was staying with a friend. The caseworker provided Kim with referrals and *1417 encouraged further contact; she also told Kim about the upcoming hearing on November 15.
Kim failed to appear at the six-month review hearing. The court continued Melinda's placement with the grandparents and set the 12-month review for May 15, 1990. In the interim between the six- and twelve-month review hearings, Kim failed to contact her caseworker, but she did contact the grandparents three times and visited Melinda once. The grandparents reported their belief that Kim was living in a car somewhere in Santa Ana. Kim was removed from the waiting list for counseling and parenting classes because she did not respond by a designated date. In April 1990, the grandparents informed the SSA they were no longer interested in providing a home for Melinda as they felt they were too old and that Melinda would profit from being permanently placed with a younger family.
Once again, the SSA conducted an absent parent search through the post office and the index systems of various county, state and military agencies. Certified letters giving notice of the May 15 hearing date were sent to Kim's possible addresses on February 26 and to the grandparents' address on May 8.
Kim failed to appear at the 12-month review hearing. The court found by clear and convincing evidence that Melinda's return to Kim would create a substantial risk of detriment to her well being, there was not a substantial probability Melinda would be returned to Kim within six months, reasonable services had been offered to Kim, and reunification services should be terminated. (§ 366.21, subds. (f), (g)(l), (h).) Based on these findings and pursuant to section 366.21, subdivision (g)(3), the court set a hearing under section 366.26. Kim signed an acknowledgment of service of notice of the hearing on August 10; it was held on November 1, 1990.
The grandmother testified that Kim began visiting Melinda once or twice a week in the grandparents' home sometime after the 12-month review hearing in May. In July or August, Kim entered the Roque Center, a residential drug rehabilitation program where she was living at the time of the hearing; her course of treatment was scheduled to end in April 1991. The grandmother testified Kim had a job and was serious about her attempt to give up her drug habit; she admitted, however, that Kim had been an addict since she was 17 and had periodically tried to quit. Kim had once been off drugs for as long as eight months; at the time of the hearing, she had been away from drugs for five months. The grandmother further testified that she and her husband were no longer willing to care for Melinda unless the court awarded her to Kim; in that event, they would care for her until Kim finished the drug program.
*1418 The caseworker testified she had monitored three 1-hour visits between Kim and Melinda in the previous five months. She did not feel Kim had a nurturing relationship with Melinda. She also testified she had conducted an adoptability study and had found Melinda adoptable.
The court found by clear and convincing evidence Melinda was likely to be adopted and termination of parental rights would not be detrimental to her; accordingly, it ordered Kim's parental rights terminated.

I
(1a) Kim claims the statutory scheme under section 300 et seq., which unifies dependency and termination proceedings,[4] fails to require due process notice for hearings leading up to the termination proceedings. She also claims the notice she was given did not even meet the statutory requirements. Because the termination order is based on findings made in the earlier hearings, she argues, the failure to give her due process notice of those hearings renders the termination order void.
(2) Kim correctly asserts that parents are entitled to due process notice of juvenile proceedings affecting their interest in custody of their children. (In re Antonio F. (1978) 78 Cal. App.3d 440 [144 Cal. Rptr. 466].) And due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (Mullane v. Central Hanover Tr. Co. (1950) 339 U.S. 306, 314 [94 L.Ed. 865, 873, 70 S.Ct. 652].)
(1b) Here, however, Kim was afforded due process at all stages of the proceedings leading up to the termination of her parental rights. The SSA made extensive efforts to locate Kim and notify her of the May 15, 1989, hearing, including sending certified letters to all possible addresses and notifying the grandparents. Before both the November 1989 and the May 1990 hearings, the SSA conducted extensive absent parent searches and sent certified letters to all possible addresses. Each time notice was given to the grandparents. Before the November 15 hearing, both the grandmother and the caseworker told Kim about the upcoming hearing.
Excepting the four months of incarceration, Kim was transient and her whereabouts were unknown from the time the initial petition was filed until shortly after the twelve-month review hearing. In re B.G. (1974) 11 Cal.3d 679 [114 Cal. Rptr. 444, 523 P.2d 244] and In re Antonio F., supra, 78 *1419 Cal. App.3d 440, cases on which Kim relies, both involved a total lack of effort on the part of the petitioning agency to locate the mother. Here, however, the SSA made sincere and extensive efforts to locate Kim; even with the benefit of hindsight, we see nothing else that should have been done. (3) "[I]t has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." (Mullane v. Central Hanover Tr. Co., supra, 339 U.S. at p. 317 [94 L.Ed. at p. 875].)[5]
(4a) Kim points out that section 366.21, subdivision (b) requires notice of status review hearings to be served on a parent personally or by certified mail addressed to the last known address between 15 and 30 days preceding the hearing date. The SSA failed to follow the statutory requirement for both the six- and twelve-month review hearings, sending notice by certified mail on November 6 for the November 15, 1989, hearing and on May 8 for the May 15, 1990, hearing. Kim claims this failure provides an additional ground for reversal of the termination order.
(5) Section 366.21, subdivision (b) provides the probation officer shall serve notice on the parent in the manner prescribed. Use of the word "shall," however, does not necessarily indicate a mandatory requirement. Where "[t]he statute does not provide a penalty or consequence for noncompliance, [and there is no] suggestion the Legislature intended to strip the court of jurisdiction in the event of a delay by the probation officer," the language should be considered directory rather than mandatory. (In re Charles B. (1986) 189 Cal. App.3d 1204, 1210 [235 Cal. Rptr. 1]. See also In re Albert B. (1989) 215 Cal. App.3d 361, 380 [263 Cal. Rptr. 694].) Reversal based solely on the SSA's noncompliance with the time periods would place "`undue weight on a matter of procedure rather than substance.'" (Ibid.)
(4b) Kim does not suggest that timely mailing to her last known address would have secured her presence at the hearings; in fact, the record reveals she had no address during the relevant 15-day time periods. The notice Kim was given meets the standards of due process. The lack of strict compliance with section 366.21, subdivision (b), in the absence of prejudice, does not render the subsequent proceedings void. (See In re Sarah H. (1980) 106 Cal. App.3d 326, 330 [165 Cal. Rptr. 61].)

*1420 II, III[*]
.... .... .... .... .... .... .... .
The judgment terminating Kim's parental rights is affirmed.
Sills, P.J., and Crosby, J., concurred.
NOTES
[1] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and III.
[2] All statutory references are to the Welfare and Institutions Code unless otherwise specified.
[3] The SSA had previously been involved with Melinda; in June 1988 she was taken into protective custody when Kim was arrested for outstanding traffic warrants. After one week, however, Melinda was released to Kim's custody and the petition filed under section 300, subdivision (a) was dismissed shortly thereafter.
[4] For a child adjudged a dependent of the juvenile court before January 1, 1989, an action to terminate parental rights was brought under Civil Code section 232 and was a separate action from the proceedings under the Welfare and Institutions Code.
[5] Kim suggests due process requires notice as prescribed for civil actions under the Code of Civil Procedure. There is no authority for this proposition and we decline to create it.
[*] See footnote 1, ante, page 1413.