121 Cal.Rptr.2d 512 (2002)
99 Cal.App.4th 1030
In re ALEXANDER B., a Person Coming Under the Juvenile Court Law.
Sacramento County Department of Health and Human Services, Plaintiff and Respondent,
v.
Joanna B. et al., Defendants and Appellants.
No. C039584.
Court of Appeal, Third District.
June 27, 2002.
Rehearing Granted July 23, 2002.
*514 Carolyn S. Hurley, under appointment by the Court of Appeal, for Defendant and Appellant JoAnna B.
Michael B. McPartland, Petaluma, under appointment by the Court of Appeal, for Defendant and Appellant Allen B.
Robert A. Ryan, Jr., County Counsel, and Kathryn A. Shurtleff, Deputy County Counsel, for Plaintiff and Respondent.
Certified for Partial Publication.[*]
*513 ROBIE, J.

INTRODUCTION
Appellants, the mother and father of the minor, appeal from an order of the juvenile court terminating their parental rights. (Welf. & Inst.Code, §§ 366.26, 395; further undesignated statutory references are to the Welfare and Institutions Code.) The mother, who was incarcerated at the time of the section 366.26 hearing, claims that the juvenile court erred by terminating her parental rights without her presence. The mother also claims she received ineffective assistance of counsel because her attorney failed to secure her presence at the hearing. Additionally, appellants claim the matter should be remanded for the juvenile court to determine whether a recently enacted statutory exception to adoption applies. Finding these contentions lack merit, we shall affirm.

FACTUAL AND PROCEDURAL BACKGROUND
A dependency petition was filed in July 1999, regarding the infant minor and his four siblings, based on the parents' substance abuse problems.[1],[2] The minor and three of his siblings were detained in the home of a maternal aunt. In August 1999, the petition was sustained and a reunification plan was ordered.
By February 2000, the maternal aunt was no longer able to care for the minor's siblings, but she remained committed to providing the minor with a long-term placement.
*515 As of August 2000, the mother was not in compliance with much of her case plan and her visits with the minor were sporadic. In November 2000, the juvenile court terminated the mother's reunification services but granted the father additional services. At a hearing in March 2001, the juvenile court terminated the father's reunification services and set a hearing pursuant to section 366.26 to select and implement a permanent plan for the minor.
Based on the minor's age, health and developmental status, the social worker assessed him to be adoptable, although she expressed concerns regarding the suitability of the maternal aunt as an adoptive placement. The mother's visits with the minor continued to be sporadic until she became incarcerated in April 2001. A bonding assessment in May 2001 concluded it would not be detrimental to the minor if parental rights were terminated.
Pursuant to an "order for prisoner's appearance" prepared by the mother's attorney, the mother was present in July 2001 on the date set for the section 366.26 hearing. The mother's attorney advised the court that the mother was contesting termination of her parental rights and that he intended to have the mother testify at the hearing, in addition to other witnesses. The juvenile court continued the hearing and told the mother's attorney he would need to prepare an "order to produce" if he wanted the mother present. Neither an order to produce the mother nor a waiver of the mother's appearance is contained in the record.
The mother was not present at the section 366.26 hearing in September 2001. In response to the juvenile court's inquiry, the mother's attorney stated that the mother was still in prison. The mother's attorney did not call any witnesses, although the minor's father and the foster parent for the minor's siblings testified at the hearing. Following testimony and arguments of counsel, the juvenile court found the minor adoptable and terminated parental rights.

DISCUSSION

I
The mother contends her due process rights were violated because she was not present at the hearing at which her parental rights were terminated. We disagree.
Due process requires notice and an opportunity to be heard. (In re Melinda J. (1991) 234 Cal.App.3d 1413, 1418, 286 Cal.Rptr. 239.) For an incarcerated parent, this entails "meaningful access to the courts." (In re Axsana S. (2000) 78 Cal. App.4th 262, 268-269, 92 Cal.Rptr.2d 701.) There is no due process right in dependency proceedings for an incarcerated parent to be personally present. (Id. at p. 270, 92 Cal.Rptr.2d 701.)
Here, the mother was present on the date that the section 366.26 hearing was originally set, by which time the social worker's report recommending termination of parental rights had been filed. Thus, the mother had an opportunity to discuss the social worker's recommendations with her attorney, who later represented her at the section 366.26 hearing. As she had notice of the hearing and was represented by an attorney with whom she had an opportunity to discuss the issues before the court, we find the mother had "meaningful access to the courts." (In re Axsana S., supra, 78 Cal.App.4th at pp. 268-269, 92 Cal.Rptr.2d 701.)
In the context of her due process argument, the mother also raises the statutory right of incarcerated parents to be present at proceedings affecting their parental rights pursuant to Penal Code *516 section 2625. Penal Code section 2625, subdivision (b), requires notice to an incarcerated parent of "any proceeding brought under ... Section 366.26 of the Welfare and Institutions Code, where the proceeding seeks to terminate the parental rights of any prisoner, ..."
Subdivision (d) of Penal Code section 2625 provides, in relevant part: "Upon receipt by the court of a statement from the prisoner or his or her attorney indicating the prisoner's desire to be present during the court's proceedings, the court shall issue an order for the temporary removal of the prisoner from the institution, and for the prisoner's production before the court. No proceeding may be held under ... Section 366.26 of the Welfare and Institutions Code ... without the physical presence of the prisoner or the prisoner's attorney, unless the court has before it a knowing waiver of the right of physical presence signed by the prisoner or an affidavit signed by the warden, superintendent, or other person in charge of the institution, or his or her designated representative stating that the prisoner has, by express statement or action, indicated an intent not to appear at the proceeding."
In the present matter, the mother's attorney advised the juvenile court that he intended to call the mother as a witness at the section 366.26 hearing. As the mother could not be called as a witness unless she was present at the hearing, we find this was sufficient to constitute "a statement from the prisoner or ... her attorney indicating the prisoner's desire to be present during the court's proceedings, ..." (Pen. Code, § 2625, subd. (d).)
Once the juvenile court receives a statement that the incarcerated parent desires to be present at a section 366.26 hearing, Penal Code section 2625, subdivision (d), prohibits the hearing from going forward "without the physical presence of the prisoner or the prisoner's attorney" unless the court has received a signed waiver or affidavit indicating the parent's intent not to appear. Here, the juvenile court did not arrange for the mother to be produced at the hearing and was not in possession of a signed waiver or affidavit indicating she did not intend to appear. We do not agree with respondent that the mother's attorney "need[ed] to file an Order to Produce if indeed he wanted the mother to be produced." Given the "significant interests of the parent at stake" at a section 366.26 hearing, "it is reasonable to require the [juvenile] court to arrange for the incarcerated parent's attendance if the parent manifests that intent." (In re Barry W. (1993) 21 Cal.App.4th 358, 368, 26 Cal.Rptr.2d 161.)
Respondent argues that because Penal Code section 2625 provides that the hearing can proceed if "the prisoner or the prisoner's attorney" is present, the presence of the mother's attorney at the section 366.26 hearing was sufficient to comply with the statute. We acknowledge that there is case law to support this argument. (See In re Axsana S., supra, 78 Cal.App.4th at p. 267, 92 Cal.Rptr.2d 701; In re Rikki D. (1991) 227 Cal.App.3d 1624, 1629, 278 Cal.Rptr. 565.) Nonetheless, our examination of Penal Code section 2625 leads us to conclude that a conjunctive construction of the word "or" is warranted.
Although the word "or" generally indicates alternatives, it can, in certain contexts, have a conjunctive meaning.[3] A *517 conjunctive construction of a word "is sanctioned only when such construction is found necessary to carry out the obvious intent of the Legislature in a statute (Houge v. Ford (1955) 44 Cal.2d 706, 712, 285 P.2d 257.)
The "obvious intent" of Penal Code section 2625 is to assure that incarcerated parents are notified of critical proceedings affecting their parental interests and are given the opportunity to be present at such proceedings. A disjunctive reading of the word "or" in the phrase "without the physical presence of the prisoner or the prisoner's attorney" would undermine this intent. For example, if only the incarcerated parent's attorney needed to be present at the hearing, the requirement in Penal Code section 2625, subdivision (d) that the court issue an order for the incarcerated parent's production when the parent expresses a desire to be present could be ignored as long as the presence of the parent's attorney was secured. Similarly, the requirement of a signed waiver of the right to be present would have little purpose if the court could proceed without such waiver if the parent's attorney was present. Furthermore, under a disjunctive reading of the language in question, the court could proceed with a section 366.26 hearing without counsel for the incarcerated parent if the parent is personally present. The juvenile court would even be authorized to proceed in the absence of both the incarcerated parent and the parent's attorney if the parent signed a waiver of the right to be present.
"`[I]t is fundamental that a statute should not be interpreted in a manner that would lead to absurd results.'" (People v. Bryant (1992) 10 Cal.App.4th 1584, 1600, 13 Cal.Rptr.2d 601.) A disjunctive reading of the phrase in question would lead to absurd results and would contravene "the obvious intent" of the statute. Therefore, we reject this interpretation and impute to the word "or" a conjunctive meaning. Under this analysis, the juvenile court was required to either arrange for the mother's presence at the section 366.26 hearing or obtain a signed waiver from her of her statutory right to be physically present. The juvenile court failed to comply with either statutory alternative.
Our finding that the juvenile court failed to comply with Penal Code section 2625 does not end our inquiry. Because the error is a violation of a statutory right, the mother must demonstrate prejudice to prevail on appeal, i.e., she must show that it is reasonably probable a result more favorable to her would have been reached in the absence of the error. (In re Melinda J., supra, 234 Cal.App.3d at p. 1419, 286 Cal.Rptr. 239.) She has not done so.
"[T]he sole purpose of the section 366.26 hearing is to select and implement one of the listed permanent plans." (In re Marilyn H. (1993) 5 Cal.4th 295, 304, 19 Cal.Rptr.2d 544, 851 P.2d 826.) The preferred permanent plan is adoption. (§ 366.26, subd. (b)(1).) If a child is determined to be adoptable, the juvenile court is required to terminate parental rights at the section 366.26 hearing unless the court finds one of the statutory exceptions to adoption applies. (§ 366.26, subd. (c)(1).)
Here, the minor's age, physical condition and emotional state all suggested that the minor was adoptable, if not by his maternal aunt, then by another adoptive family. (See In re Sarah M. (1994) 22 Cal.App.4th 1642, 1649-1650, 28 Cal.Rptr.2d 82.) The mother's visitation was sporadic even before she was incarcerated, indicating the unavailability of the exception to adoption described in section 366.26, subdivision (c)(1)(A).
*518 The mother does not contend that if she had been present, she could have presented evidence concerning either the minor's adoptability or the existence of an exception to adoption. Instead, the mother suggests she could have testified regarding the minor's placement with the maternal aunt, and regarding her own involvement in rehabilitation programs for substance abuse. Return of the minor to parental custody is not an option at a section 366.26 hearing. (In re Marilyn H., supra, 5 Cal.4th at p. 305, 19 Cal.Rptr.2d 544, 851 P.2d 826.) Nor is the suitability of a prospective adoptive placement at issue unless adoptability is premised solely on a particular placement. (In re Sarah M., supra, 22 Cal.App.4th at p. 1651, 28 Cal.Rptr.2d 82.) Thus, the areas of testimony proposed by the mother were not relevant to any of the issues before the juvenile court at the section 366.26 hearing.
The mother's attorney was present at the section 366.26 hearing, cross-examined one of the witnesses, and argued for a permanent plan other than adoption. The mother has failed to demonstrate that any prejudice resulted from the mother's absence from the hearing at which her parental rights were terminated.

II-III[**]

DISPOSITION
The order of the juvenile court terminating the parental rights of appellants is affirmed.
We concur: SCOTLAND, P.J., and HULL, J.
NOTES
[*] Under California Rules of Court, rules 97603) and 976.1, only the Introduction, Factual and Procedural Background, part I of the Discussion and the Disposition are certified for publication.
[1] The minor's date of birth is reported at different times in the record as May 11, 1999, and June 19, 1999.
[2] The minor's siblings are not subjects of this appeal.
[3] An example of a conjunctive use of the word "or" is illustrated by the following sentence: "I did not buy apples or oranges." If the word "or" is given its ordinary, disjunctive meaning, the sentence would convey that either no apples were purchased or no oranges were purchased, whereas, this sentence construction is ordinarily understood to mean that neither apples nor oranges were purchased.
[**] See footnote *, ante.