Filed 1/8/15  In re K.A. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b).  This opinion has not been certified for publication or ordered published for purposes of rule 977.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re K.A., a Person Coming Under the Juvenile Court Law. | B256516 (Los Angeles County Super. Ct. No. CK94467) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. S.A., Defendant and Appellant. | |

APPEAL from orders of the Juvenile Court of Los Angeles County.  Teresa Sullivan, Judge.  Affirmed.

Linda Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

Richard D. Weiss, Acting County Counsel, Dawyn R. Harrison, Assistant County Counsel and Kimberly Roura, Deputy County Counsel for Plaintiff and Respondent.

No appearance on behalf of Minor.

\* \* \* \* \* \*

Appellant S.A. ("father") challenges the juvenile court's order terminating his parental rights over his 13-year-old daughter K.A. Father contends that the Los Angeles County Department of Children and Family Services ("DCFS") failed to provide him with proper notice of the jurisdictional hearing, in violation of Welfare & Institutions Code[1] section 291, subdivision (e)(1), and in violation of his constitutional right to due process of law. He also challenges the juvenile court's finding that it would be detrimental to K.A. to place her in father's custody.[2] We hold that DCFS gave proper notice to father in accordance with section 291, subdivision (e)(1) and due process of law. We further hold that the juvenile court did not abuse its discretion when it terminated father's parental rights and placed the minor with her maternal grandmother ("grandmother") for adoption. There was substantial evidence presented to the court that it would be detrimental for the minor if she were placed with either of her parents, and that it would be in her best interests to be adopted by grandmother, with whom she had lived for nearly her entire life.

FACTUAL AND PROCEDURAL SUMMARY

From a very young age, the minor lived with grandmother pursuant to an informal agreement between the child's mother K.N. ("mother") and grandmother. The three of them lived together for the first two years of minor's life. When the minor was two, mother was convicted of felony burglary and was incarcerated for five years. After mother's release from prison, the minor continued to reside with grandmother most of the time. Mother occasionally lived with minor and grandmother at the latter's home. Father was not involved in the child's life.

A petition under section 300, subdivisions (b) and (j), was filed on December 26, 2012, on behalf of then 12-year-old K.A. and her four-year-old half brother Jacob. In conjunction therewith, K.A. was legally detained from mother and ordered placed with grandmother, although she was in fact already living with grandmother at the time. The

---

[1]     All further statutory references are to the Welfare and Institutions Code.
[2]     The child's mother did not appeal the juvenile court's orders.

2

petition alleged that mother had a history of illicit drug use and was a current user of methamphetamine. It also alleged that mother had a history of mental health problems. The petition contained no allegations against father.

At the detention hearing on December 26, 2012, the juvenile court found father to be the minor's presumed father based on mother's answers to the "Parentage Questionnaire." In it she stated that father had held himself out openly as the minor's father and "received her into his home." She further stated that the Child Support Division "had declared paternity." She provided a telephone number for father. The court ordered DCFS to conduct a due diligence search for father. The court made detention findings as to both mother and father.

DCFS called the telephone number mother had provided for father, which appeared to be father's phone number. On January 18, 2013, the social worker left a message for father, requesting a return call. Father did not contact the social worker.

DCFS also completed a due diligence search for father. The search identified five potential addresses for him. Notice by certified mail, return receipt requested, was mailed to father at each of the five addresses. As part of its due diligence search, DCFS checked the state, federal, and county jail systems for father, including the San Luis Obispo County Jail, and determined that as of that date, father was not in custody.

At the January 28, 2013 jurisdiction hearing, the juvenile court found that the due diligence search for father had been completed as required by law, and that notice had been given to all parties in conformity with the statute. Mother waived her right to a court trial, pleading no contest to the charges. The court sustained the petition as to mother, declared K.A. a dependent of the juvenile court, found that substantial danger existed as to the minor's physical and emotional health and safety and found that there were no reasonable means to protect her other than to remove her from the custody of her parents. The court then formally detained K.A. with grandmother, with whom she was already residing. The court ordered reunification services for mother, and denied such services for father because his whereabouts were unknown.

3

In June 2013, the minor told the social worker that she was very anxious to close the case and to get on with her life. Grandmother, her partner, and minor were now living in their own house on the same property as minor's great-grandparents.

At a hearing on July 29, 2013, the juvenile court set a contested six-month review hearing for August 23, 2013. K.A.'s counsel reported at that time that the child appeared to be very happy and well cared for by grandmother.

At the August 2013 review hearing, mother waived her rights to continued reunification services. The court therefore terminated mother's reunification services and calendared a section 366.26 hearing for December 19, 2013. The court also found that return of K.A. to her parents' physical custody would create a substantial risk of detriment to her. The court clerk mailed notice of that hearing to father's last known address.

The adoption social worker reported that grandmother and her wife were dedicated to providing a home and permanency for K.A. The child was very happy about the stability that she had with her grandmother, and looked forward to adoption. They all viewed the adoption as a legal formality and not a change. K.A. stated that she wanted to be adopted by grandmother and her wife.

In October 2013, DCFS located father in the San Luis Obispo County jail. On October 25, 2013, father was personally served with notice of the upcoming section 366.26 hearing. DCFS also sent father a copy of the most recent DCFS report.

DCFS submitted an "Order for Prisoner's Appearance at Hearing Affecting Parental Rights," seeking father's transportation to the next hearing from the San Luis County jail. Father returned the above-referenced form to the court, indicating that he wanted an attorney appointed for him and wanted to be present at the hearing. However, the statewide prisoner transportation office stated that the order for father's appearance was returned due to his having a pending court proceeding in his criminal case in San Luis Obispo. Consequently, father was not present at the December 19, 2013 hearing. The juvenile court appointed counsel to represent father. The court asked counsel to

4

contact father and to advise the court as to father's position on the matter before the juvenile court.

At the section 366.26 hearing, mother's counsel stated that mother would submit to the recommendation for K.A.'s adoption. After finding that proper notice had been given to all parties as required by law, the court continued the hearing and ordered that father be transported to court, if possible, but noted that it was "very unlikely" that would happen with father being in San Luis Obispo County. The court further ordered father's counsel to communicate with his client, and to be prepared to proceed at the next court date, whether or not father was present.

Despite the juvenile court's order for transportation of father, the statewide prisoner transportation office returned the order, stating that father was not available due to pending court dates in his criminal case. At the continued section 366.26 hearing, father's counsel was present and stated that he had not been able to contact father. The juvenile court again continued the hearing for father's counsel to continue to attempt to contact him, and for the final approval of the adoption home study. Mother's counsel stated that mother "would like to have the adoption to go forward as quickly as possible [as] it's causing trauma and disturbance to the child."

At the next hearing date on March 4, 2014, counsel for DCFS indicated that the adoption home study had been approved. Father's counsel stated that he had been in contact with father, who indicated that "communication with the grandmother who is seeking to adopt might resolve . . . matters or might help matters a great deal." Father told counsel that he had not received a copy of the section 300 petition or the jurisdiction/disposition report, and that the first time he spoke with a social worker about the proposed adoption was the previous month.

Counsel for DCFS noted that father had not been involved in K.A.'s life and was not offered reunification services, and that because K.A. was 13 years old, it was unclear what affirmative defense he could offer to termination of parental rights. The child's counsel agreed, stating that K.A. barely knew her father, was old enough to state her

5

wishes, and wanted to be adopted by her grandmother. Mother's counsel agreed, stating that mother was "anxious to get this completed so that her daughter's life is stabilized."

The court appointed counsel to represent father for all purposes, and continued the hearing one more time. It informed DCFS that it should be prepared at the next hearing to delineate the efforts it made to contact father at the commencement of the proceedings. The court noted that its brief examination of the record indicated that DCFS had made ample attempts to both contact father and to obtain his presence at the hearing once he was finally located. The court stated that it fully intended to proceed with the section 366.26 hearing on the ensuing court date.

On March 21, 2014, the date of the continued hearing, father's counsel filed a section 388 petition alleging a change of circumstances and requesting to change the court's prior orders. The petition alleged that the juvenile court's orders were void because it took jurisdiction of the minor without proper notice to father, and hence was without jurisdiction when it made all subsequent findings and orders. Father based his argument on the contention that notice to him of the jurisdictional petition was sent by certified mail only, whereas section 291, subdivision (e)(1) requires that notice be sent by certified mail, "return receipt requested." The petition additionally contended that the child's best interests are served when the parties to the proceeding receive notice and a meaningful opportunity to participate in the proceedings, citing *Ansley v. Superior Court* (1986) 185 Cal.App.3d 477. The petition asserted that father received neither.

After hearing argument from both father's counsel and DCFS, the juvenile court denied the section 388 petition, finding that the efforts to provide notice to father were sufficient. The juvenile court then proceeded to the section 366.26 hearing. Counsel for both K.A. and mother submitted on the recommendation. Father's counsel objected, but only on the basis of his notice claim. The juvenile court again found that proper notice had been given throughout the case, that minor was adoptable, that she had consented to the adoption, and that no exceptions to adoption applied. The court found that it would be detrimental to the minor if she were returned to the custody of her parents. The court

6

designated grandmother and her former companion, now her wife, as minor's prospective adoptive parents.

On May 14, 2014, father's counsel filed a timely notice of appeal. He assigns two errors to the trial court proceedings. He first claims that his due process rights were violated because he did not have proper notice of the jurisdictional hearing. He also challenges that the juvenile court's finding that returning K.A. to his care would be detrimental to the child. We consider each of these contentions below.

## DISCUSSION

1. *Sufficiency of notice to father*

Section 291 sets forth the notice which must be provided to a parent before a juvenile court may take dependency jurisdiction over a child. The section requires notice to be served either by personal service or by certified mail, return receipt requested. (§ 291, subd. (e)(1).)

Father claims that notice of the commencement of this dependency proceeding was not given in conformity with section 291, subdivision (e)(1) because, although it was sent by certified mail, a return receipt was not requested. He also argues that, even if the requirements of statutory notice were met, his due process rights were violated since he did not receive actual notice of the jurisdiction hearing.

a. *Proper notice was given pursuant to section 291, subdivision (e)(1)*

At the jurisdictional hearing, the juvenile court found that notice by mail was served on father in compliance with the provisions of section 291, subdivision (e)(1). The record contains substantial evidence to support that finding.

A due diligence search was conducted and identified five potential addresses for father. DCFS mailed notice by certified mail to each of the five addresses. DCFS's proof of service stated that notice was sent to each of the five addresses by mailing "Certified or Return Receipt Requested." DCFS provided a copy of the Certified Mail Receipt for the notice mailed to each address. This establishes that each notice was sent

7

by Certified Mail. In addition, the post office stamps and endorsements on the receipts indicate that DCFS had paid a "Return Receipt Fee" for each of these certified mailings. Due to the placement of a date stamp, two of the five receipts do not clearly show that a return receipt was requested. However, the handwritten endorsement on each receipt is consistent, and the date stamp is the same. When considered in conjunction with the three unambiguous receipts, together with proof of service showing the same method of delivery for each address, substantial evidence supports the finding that DCFS sent all five notices by certified mail, return receipt requested.

Based on the foregoing, the juvenile court properly found that notice to father had been given as provided by section 291, subdivision (e)(1).

### b. *Father's due process rights were not violated*

Father contends that even compliance with section 291, subdivision (e)(1) does not satisfy due process requirements since he did not receive actual notice of the filing of juvenile dependency petition. Citing *Ansley v. Superior Court*, *supra,* 185 Cal.App.3d 477, father concludes that failure to provide him with "proper notice was a fatal defect in this case which requires the jurisdiction findings and dispositional orders be set aside."

We disagree. Due process requires only "'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" (*In re Melinda J.* (1991) 234 Cal.App.3d 1413, 1418, quoting *Mullane v. Central Hanover Bank & Trust Co.* (1950) 339 U.S. 306, 314.)

Substantial evidence reveals that DCFS gave notice reasonably calculated to apprise father of the jurisdictional hearing. In addition to giving notice by certified mail, return receipt requested, to all of father's known addresses, DCFS left a recorded message for father at the telephone number mother had given for father, but received no return call from father. In addition, mother indicated that father was aware of the ongoing dependency case. While father complained that the notice sent to five addresses associated with him did not include return receipts, he made no claim that he did not

8

reside at any of those addresses, nor that the telephone number mother provided to DCFS was not his, or that he did not speak with mother about the matter. DCFS located father shortly after his arrest and promptly personally served him in the San Luis Obispo county jail with notice of the upcoming section 366.26 hearing.

This case is clearly distinguishable from the cases upon father relies, such as *Ansley v. Superior Court*, *supra*, 185 Cal.App.3d 477, in which there was "no evidence on the record that the Department made any attempt to serve [a father] with notice of the proceedings." (*Id.* at p. 481; accord *In re B.G.* (1974) 11 Cal.3d 679, 688-689.) Where, as here, a parent has not shown that even more perfect notice efforts would have secured the parent's presence at the hearing, reversal based on the specific statutory requirements is not required because it "would place 'undue weight on a matter of procedure rather than substance.' [Citation.]" (*In re Melinda J., supra,* 234 Cal.App.3d at p. 1419.)


2. *The finding of detriment*

At the March 21, 2014 section 366.26 hearing, the juvenile court stated: "I do find at this time it would be detrimental to the child to be returned to the parents." Father's counsel was present, and had previously objected to the termination of parental rights based on father's lack of notice of the jurisdiction hearing. He did not, however, object to this explicit finding that placement of K.A. with father would be detrimental to the child. Father nevertheless challenges the finding on appeal.

On appeal, parties are not permitted to raise issues which they could have, but did not, raise in the trial court. "[A]ny other rule would permit a party to trifle with the courts" by "deliberately stand[ing] by" without making an objection, and "thereby permit the proceedings to reach a conclusion in which the party could acquiesce if favorable and avoid if unfavorable." (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1338-1339 ["Many dependency cases have held that a parent's failure to object or raise certain issues in the juvenile court prevents the parent from presenting the issue to the appellate court"].) It is fundamentally unfair to the other parties for an appellate court to consider a

defect that could have been presented to, and cured by, the trial court. (See *Steve J. v. Superior Court* (1995) 35 Cal.App.4th 798, 810-811.)

Here, had father's counsel objected to the finding that placement with father would be detrimental to K.A., the parties could have made a full record on the issue, which would allow for proper appellate review. Because father did not object to the finding, the parties had no reason to enlarge the record on the issue.

In any event, the juvenile court's detriment finding is supported by substantial evidence.[3] Thirteen-year-old K.A. had never lived with her father and had not seen him in the previous two to three years. At the time of the detriment finding, father was incarcerated. Thus, to "return" the minor to father's custody would require not simply that she be removed from the only home she had ever known, but that she would be placed in an unidentified home, presumably with virtual, if not actual, strangers. Given the fact that this young teenage girl repeatedly stated her desire to continue living with grandmother, in whose home she was thriving physically, emotionally and educationally, we find substantial evidence for the juvenile court's finding that removal of K.A. from grandmother's home and returning her to father's custody would be detrimental to her.

---

[3] Father's citation to cases in which the juvenile court failed to make a finding of detriment (including *In re Z.K.* (2011) 201 Cal.App.4th 51; *In re Gladys L.* (2006) 141 Cal.App.4th 845; *In re T.G.* (2013) 215 Cal.App.4th 1) are not applicable to the instant case. Here, the court made an explicit finding of detriment at both the jurisdiction and the section 366.26 hearings.

10

DISPOSITION

The orders of the juvenile court are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


GOODMAN, J.[*]


We concur:


TURNER,  P. J.


KRIEGLER, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.