Filed 5/24/24  In re D.S. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re D.S. et al., | B326179 |
| Persons Coming Under the Juvenile Court Law. | (Los Angeles County Super. Ct. No. 21CCJP04400) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>STACEY R.,<br><br>        Defendant and Appellant;<br><br>JONATHAN S.,<br><br>        Defendant and Respondent. | |

APPEALS from orders of the Superior Court of Los Angeles County, D. Brett Bianco, Judge.  Affirmed.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant Stacey R.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Respondent Jonathan S.

_____

Appellant Stacey R. (Mother) asserts the juvenile court erred in awarding Jonathan S. (Father) sole legal custody over their three children—D.S. (born 2016), R.S. (born 2018), and I.S. (born 2019)—when it terminated dependency jurisdiction through what is commonly referred to as an exit order.  Mother asserts she did not receive proper notice before the hearing where the court made its legal custody decision, and alternatively that substantial evidence does not support the court's award of sole legal custody to Father.  We disagree and affirm the legal custody order.

During the dependency proceedings involving D.S., R.S., and I.S., Mother gave birth to a fourth child, K.R. (born 2022), who has a different father.  The juvenile court asserted jurisdiction over K.R., and those proceedings remain pending.  Mother separately appeals the jurisdictional findings as to K.R.  We find substantial evidence supports the findings, and affirm the juvenile court's exercise of jurisdiction over K.R.

2

## FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.    Prior Dependency History

In May 2017, the juvenile court sustained a Welfare and Institutions Code[2] section 300 petition alleging D.S. was at risk based on Mother's substance abuse and domestic violence.  The court declared D.S. a dependent, removed him from Mother, and ordered a home-of-parent-father placement.  During the reunification period, Mother did not participate in any court-ordered treatment programs, which had included a drug and alcohol treatment program, drug and alcohol testing, therapy, and a 52-week domestic violence program.  The juvenile court terminated jurisdiction in 2018 through an exit order giving the parents joint legal custody, Father sole physical custody, and Mother monitored visitation.

A referral in March 2020 alleged Mother and Father emotionally abused D.S., R.S., and I.S.  When the referral was investigated, Mother claimed she was the victim of domestic violence by Father.  Father claimed Mother assaulted him while Mother was intoxicated.  The referral was closed as inconclusive.

A little over one year later, in April 2021, the Los Angeles County Department of Children and Family Services (DCFS) received a referral alleging Mother and Father emotionally abused and generally neglected the three children.  The reporting party stated Mother was not observing, and Father was not enforcing, an active domestic violence restraining order against

---

[1] We limit our factual and procedural summary to that which is relevant to the issues presented by these appeals.

[2] All unspecified statutory references are to the Welfare and Institutions Code.

3

Mother and that the parents engaged in frequent domestic violence. The reporting party also alleged that the parents used drugs in the children's presence, including blowing marijuana smoke into the children's faces. DCFS closed the referral as inconclusive.

## B.  The Dependency Proceedings at Issue in These Appeals

### 1.  *Initial Referral and Subsequent DCFS Investigation*

On July 17, 2021, police arrested Mother for committing domestic violence against Father. The altercation occurred in the presence of D.S., R.S., and I.S., and led to a referral to DCFS. On July 27, 2021, DCFS received a second referral, alleging that Mother was using drugs and alcohol with Father in the children's presence. The referral further discussed the July 17, 2021 domestic violence incident. It stated Mother and Father had argued. As Mother was leaving their home, she stuffed something in her purse and then struck Father with the purse, causing him to fall to the floor unconscious.

Investigation by DCFS showed the following. Mother's criminal history included a July 2016 conviction for using or being under the influence of a controlled substance. Maternal grandmother expressed concern about Mother and Father's use of marijuana and nitrous oxide. Maternal grandmother stated the parents used nitrous oxide once with a friend inside an automobile which led to a car crash; the parents did not contact the police right after the crash because they were high. A maternal aunt expressed concern about Mother and believed she needed therapy and other work.

Father reported that Mother smoked marijuana and drank alcohol. Sometimes Mother was intoxicated while caring for the

4

children.  Paternal grandmother reported Mother smoked marijuana and drank alcohol; paternal grandmother did not know if Mother used any other substances.  Paternal grandmother stated Mother was drunk and high during a domestic violence incident between the parents, and that Mother would inhale nitrous oxide to get high.  Mother once got upset and hit a window with her hand because Father would not give her marijuana.

DCFS was unable to obtain from Mother detailed information regarding the July 17, 2021 physical altercation with Father because Mother made irrational statements and appeared paranoid.  Despite her prior conviction, on at least one occasion Mother denied being arrested for using or being under the influence of illegal substances.  She admitted smoking marijuana, but denied using any other drugs and claimed to have stopped using marijuana in 2021.  Mother stated that she drank alcohol, but not often.

Mother agreed to drug test.  She tested negative for drugs three times between October and December 2021.  Mother failed to test five times from September through December 2021.

2.    *DCFS Files a Petition as to D.S., R.S., and I.S.*

On September 17, 2021, DCFS filed a section 300 petition on behalf of D.S., R.S., and I.S., alleging Mother and Father had a history of engaging in violent altercations and that Father had a history of substance abuse.  An amended petition filed November 18, 2021 additionally alleged substance abuse by both parents.  At a disposition hearing held December 3, 2021, the juvenile court declared the children dependents of the court and ordered family reunification services which included for Mother a full drug and alcohol program with aftercare, weekly random or

5

on-demand drug and alcohol testing, a 12-step program, a 52-week domestic violence program, parenting education, individual counseling, compliance with any active restraining or stay away order, and monitored visits.

A February 24, 2022 last minute information filed with the court reported that Mother had not yet enrolled in a full drug program, a 12-step program, a domestic violence program, a parenting program, or individual counseling. The last minute information and other reports showed Mother tested negative for drugs nine times from January 5, 2022 through March 1, 2022. Mother's visitation with the children was inconsistent, and she had difficulty redirecting them when she did visit.

In April 2022, R.S.'s foster parent reported R.S. was touching herself. R.S. disclosed she witnessed Mother masturbating in front of her.

A June 8, 2022 status review report reported Mother continued to be in minimal compliance with her court-ordered case plan. Mother was drug testing but had not enrolled in any programs. Mother further tested negative 12 times from March 11 through May 25, 2022. Her visits with the children continued to be inconsistent. DCFS had difficulty contacting Mother, as she rarely responded to calls or texts.

On June 22, 2022, the juvenile court made a home-of-parent-father order and ordered enhancement services for Mother. The court further set the matter for a section 364 review hearing on December 28, 2022, and ordered DCFS to notice all appropriate parties.

Mother tested negative for drugs when she appeared for testing, but she missed six drug tests from July 13 to August 19, 2022. During this period, K.R. was born. Mother blamed the

6

missed tests on having to isolate because she had COVID-19 and needed to recover from K.R.'s birth. Mother tested negative on August 22 and 29, 2022. Mother failed to test on September 8, 2022. Mother continued to deny any substance abuse problems.

As of September 22, 2022, Mother had not completed any court-ordered programs; Mother blamed this failure on DCFS not giving her referrals and not contacting her. Mother had recently enrolled in drug counseling, parenting classes, and a domestic violence program. On October 18, 2022, Mother reported that she still had not enrolled in a substance abuse program or individual counseling.

Mother tested negative eight times from September 16 through November 1, 2022.

On December 6, 2022, Mother stated she did not have time to participate in family reunification services and refused those services. DCFS reported on December 28, 2022 that Mother continued to minimize the issues that brought D.S., R.S., and I.S. before the dependency court. Mother took no responsibility for the children being removed from her care and blamed the dependency case on Father. Mother further blamed DCFS for her lack of compliance with the court-ordered case plan.

3.    *Section 364 Hearing for D.S., R.S., and I.S.*

Before the section 364 hearing scheduled for December 28, 2022, DCFS provided notice as ordered to Mother as well as other parties. The notice stated that DCFS would recommend at the hearing that the court continue dependency jurisdiction, and that DCFS continue to provide services to the parents and children.

In a December 28, 2022 status review report, DCFS reported that Mother had not visited D.S., R.S. or I.S. since June 2022. Mother had not enrolled in or participated in a 12-step

7

program.  Mother had taken steps towards completing a domestic violence and parenting program, and participated in an intake appointment for individual counseling.

At the section 364 hearing, the juvenile court informed counsel and the parties that its tentative ruling was to terminate jurisdiction over D.S., R.S. and I.S.  Father's counsel agreed with the tentative.  Mother's counsel submitted on the tentative, and requested the exit order include joint legal custody.  Minors' counsel objected to joint legal custody because of the parties' contentious relationship and Mother being non-responsive and "impossible to reach."  She requested instead that Father have sole legal custody given his track record with the children.

The court ordered dependency jurisdiction terminated upon entry of an exit order awarding Father sole legal and physical custody, and Mother monitored visitation, explaining it was making that order "for the reasons outlined by [minors' counsel] particularly this being a [domestic violence] case with Mother being the aggressor and being difficult and being a contentious situation."  Mother's visits were to be monitored because she had not completed her case plan.

4.      *DCFS Files a Petition as to K.R.*

On November 7, 2022, DCFS filed a section 300 petition on K.R.'s behalf.  The petition alleged Mother had a history of substance abuse (counts b-1, j-1).[3]  On November 22, 2022, the juvenile court found a prima facie case for K.R. and ordered him

---

[3] The petition further alleged Mother had a history of domestic violence (counts a-1, b-2, and j-2).  The court dismissed these domestic violence counts, and we do not discuss them further.

8

released to Mother on conditions including that Mother participate in the court-ordered case plan for K.R.'s siblings, reside with the maternal grandmother or a DCFS-approved location, cooperate with DCFS, participate in family preservation services, test clean with no unexcused drug tests, and make K.R. available for visits by DCFS.

At the December 28, 2022 adjudication hearing, counsel for DCFS argued that Mother had a history of substance abuse, including inhaling nitrous oxide, that was found to be true in the case of K.R.'s siblings. Counsel also highlighted that Mother failed to participate regularly in her court-ordered case plan and minimized her substance abuse history, demonstrating that her substance abuse issues remained unresolved. K.R.'s counsel requested the substance abuse allegations against Mother be sustained, and expressed concern that Mother was drinking and had a serious issue with nitrous oxide. Mother's counsel argued she was enrolled in treatment and her recent drug tests were negative such that K.R. was not at risk remaining in Mother's custody.

The juvenile court sustained counts b-1 and j-1 based on Mother's substance abuse. The court declared K.R. a dependent, found there were services available to prevent removal, made a home-of-parent-mother order, ordered family reunification services for Mother, and set the matter for future proceedings.

## DISCUSSION

### A.     The Juvenile Court Did Not Err in Awarding Father Sole Legal Custody Over D.S., R.S., and I.S.

#### 1.     *Mother Was Not Denied Proper Notice*

Mother argues we should reverse the legal custody order as to D.S., R.S., and I.S. because she was not provided proper notice beforehand.  " 'We review procedural due process claims de novo because "the ultimate determination of procedural fairness amounts to a question of law." [Citation.]' [Citation.]" (*In re L.W.* (2020) 44 Cal.App.5th 44, 49.)

Mother first claims that section 292, subdivision (d) entitled her to pre-hearing notice that the court might award Father sole legal custody because it provides that "[f]or a section 364 hearing, the [advance] notice must include a statement of 'any change in the custody or status of the child.' "  Mother argues the notice sent to her before the section 364 hearing did not comply with section 292, subdivision (d) because it did not state the court might make a change and award Father sole legal custody.

Mother's selective quotation of section 292 is misleading, as is her attempt to isolate that section from the rest of the statutory scheme.  Adding back in what Mother's quotation omits, section 292 states in pertinent part:  "The social worker . . . shall give notice of the review hearing held pursuant to [s]ection 364 in the following manner: [¶] . . . [¶] (d) The notice shall contain a statement regarding the nature of the hearing to be held and any change in the custody or status of the child *being recommended by the supervising agency*."  (§ 292, subd. (d), italics added.)  Section 364, subdivision (c) requires that the juvenile court terminate jurisdiction at the section 364 hearing "unless

10

the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist" justifying continued jurisdiction. (*Ibid*.) "When the juvenile court terminates its jurisdiction over a dependent child, section 362.4 authorizes it to make custody and visitation orders . . . ." (*In re Roger S.* (1992) 4 Cal.App.4th 25, 30.)

We reject Mother's assertion that the pre-hearing notice she received did not comply with the applicable statutes. DCFS complied with section 292, subdivision (d) by providing Mother with notice of its recommendation. DCFS did not recommend sole legal custody or any other order in connection with terminating jurisdiction; it instead recommended the juvenile court continue to exercise jurisdiction over the children and order further enhancement services.[4] The juvenile court did not follow DCFS's recommendation, and instead independently determined pursuant to section 364, subdivision (c) that jurisdiction should be terminated, which necessitated the issuance of an exit order. No violation of section 292, subdivision (d) occurred.

Mother also suggests making a legal custody order at the section 364 hearing deprived her of due process distinct from any statutory requirement. "[D]ue process guarantees apply to dependency proceedings." (*In re J.P.* (2014) 229 Cal.App.4th 108, 125.) " 'In juvenile dependency litigation, due process focuses on the right to notice and the right to be heard.' [Citation.]" (*In re Vanessa M.* (2006) 138 Cal.App.4th 1121, 1129.) "[D]ue process

---

[4] As DCFS did not request either the termination of jurisdiction or sole legal custody to Father, it takes no position on Mother's appeal as to the legal custody issue. Father argues we should affirm the legal custody order.

11

requires 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' [Citation.]" (*In re Melinda J.* (1991) 234 Cal.App.3d 1413, 1418.)

Mother received notice consistent with these due process guarantees. Mother was provided advance notice of the section 364 hearing. The statutory purpose of that hearing was for the court to determine whether to continue exercising jurisdiction over D.S., R.S., and I.S. As explained above, the governing statutes further made clear that if the court determined continued jurisdiction was unnecessary, the court would address the terms of an exit order terminating jurisdiction. Mother thus received advance notice that the December 28, 2022 hearing would address whether the court would continue to exercise dependency jurisdiction, and if the court decided continued jurisdiction was unnecessary that it would address the terms (including custody orders) under which the court would terminate jurisdiction.

Contrary to Mother's claim, she was hardly caught unaware that legal custody might be discussed at the December 28, 2022 section 364 hearing. Indeed, it was Mother's counsel—not anyone else—who first raised the issue of legal custody at that hearing. Mother did not ask for more time to address the issue or to present additional evidence on the topic; she instead asked the court to rule at the hearing that joint legal custody was appropriate. We find no procedural due process violation in the court making a legal custody order in response to Mother's request.

12

2. *Substantial Evidence Supports the Legal Custody Order*

Mother alternatively argues there was no evidentiary basis for the court's legal custody award. She argues an award of sole legal custody is improper in the absence of substantial evidence that the parents had prior difficulties in making medical or educational decisions, and that the record contains no such substantial evidence.

We review the juvenile court's legal custody decision for abuse of discretion. (*In re J.M.* (2023) 89 Cal.App.5th 95, 113.) When applying this differential standard, " 'the trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.' [Citations.]" (*In re C.B.* (2010) 190 Cal.App.4th 102, 123.) "Substantial evidence is relevant evidence which adequately supports a conclusion; it is evidence which is reasonable in nature, credible and of solid value." (*In re R.C.* (2012) 210 Cal.App.4th 930, 941.) "We do not evaluate the credibility of witnesses, reweigh the evidence, or resolve evidentiary conflicts. Rather, we draw all reasonable inferences in support of the findings, consider the record most favorably to the juvenile court's order, and affirm the order if supported by substantial evidence even if other evidence supports a contrary conclusion." (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

At the section 364 hearing, after Mother requested joint legal custody, counsel for D.S., R.S., and I.S. argued for Father having sole legal custody. Minors' counsel noted that the parents had "a really bad relationship" as evidenced by repeated domestic violence which showed the parents "don't know how to get along."

13

Counsel noted Mother was often non-responsive to DCFS, and there was no reason to expect that if Mother failed to respond to DCFS during the dependency proceedings she would respond to Father on legal custody issues—especially because she blamed Father for the dependency court's involvement in her life.

The juvenile court agreed with the concerns expressed by minors' counsel, and substantial evidence supports the court's findings. Mother and Father had a contentious relationship. Although there was no recent domestic violence between them as they were no longer living together, Mother had not gotten very far in programs ordered by the court to address her domestic violence. Mother was unresponsive to DCFS during the dependency proceedings, and it was reasonable to infer that she would be similarly unresponsive to Father and thus prevent the making of joint custody decisions with necessary dispatch. Mother had opted not to visit D.S., R.S. or I.S. in the six months before the section 364 hearing. Father, on the other hand, was with the children daily. They were happy in his care; Father participated in his case plan and was working to establish routine and structure for the children. In light of this substantial evidence, the juvenile court did not err in awarding Father sole legal custody.

**B.    The Juvenile Court Did Not Err in Asserting Jurisdiction over K.R.**

1.    *Applicable Law and Standard of Review*

The juvenile court asserted jurisdiction over K.R. pursuant to subdivisions (b)(1) and (j) of section 300. As relevant here, subdivision (b)(1) permits the exercise of jurisdiction where "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness as a result of" either "[t]he

14

failure or inability of the child's parent . . . to adequately supervise or protect the child" (§ 300, subd. (b)(1)(A)), or as a result of "[t]he inability of the parent . . . to provide regular care for the child due to the parent's . . . substance abuse" (*id.*, subd. (b)(1)(D)).  Subdivision (j) provides for dependency jurisdiction where "[t]he child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions. . . ."  (*Id.*, subd. (j).)  We review jurisdictional findings under section 300 for substantial evidence. (*In re I.C.* (2018) 4 Cal.5th 869, 892.)

2. *Substantial Evidence Supports the Juvenile Court's Findings*

Mother has a long history of substance abuse.  In 2017, before R.S. and I.S. were born, the juvenile court declared D.S. a dependent based on Mother's drug abuse.  Mother did not participate in court-ordered treatment and testing programs, leading to her having only monitored visits with D.S.  In 2021, the juvenile court again declared D.S. a dependent due to Mother's substance abuse, and further named siblings R.S. and I.S. as dependents.  Mother was again ordered to participate in drug treatment.  She again failed to comply with her court-ordered case plan, leading to her having monitored visitation with all three children.

Once K.R. was born, Mother appears to have shown greater dedication to addressing her substance abuse issues, and she tested negative in the six weeks leading up to K.R.'s jurisdiction hearing.  We commend these efforts and hope Mother continues such positive forward steps.  But those six weeks of negative tests must be weighed against the entire record, which contains

15

countervailing evidence that Mother was still struggling with sobriety. Mother did not consistently test during either the reunification period for K.R.'s siblings or during the investigation related to K.R. himself and the juvenile court could fairly consider her missed tests (regardless of Mother's excuses for why she did not appear) to be positive drug tests. (*L.C. v. Superior Court* (2024) 98 Cal.App.5th 1021, 1036.) Mother denied ever having a drug problem, and "[o]ne cannot correct a problem one fails to acknowledge." (*In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197.) Mother's past drug use indicated that when intoxicated she was prone to violent outbursts, including in front of the children, that posed substantial risk to K.R. (*In re N.R.* (2023) 15 Cal.5th 520, 559 [juvenile court may find an inability to provide regular care and a substantial risk of serious harm "from the evidence that has been introduced in a particular case, including evidence relating to substance abuse, and the reasonable inferences that can be drawn from this evidence"].)

In light of the above, we conclude substantial evidence supports the juvenile court's determination that, at the time of the jurisdiction hearing, Mother had an unresolved substance abuse problem that compromised her ability to care for K.R., justifying the assumption of dependency jurisdiction under section 300, subdivisions (b)(1) and (j).

## DISPOSITION

The legal custody order as to D.S., R.S., and I.S. and the jurisdictional order as to K.R. are affirmed.

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

ROTHSCHILD, P. J.

CHANEY, J.