Filed 6/4/15  In re A.G. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re A. G., a Person Coming Under the Juvenile Court Law. | |
| | D066869 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J519036) |
| v. | |
| ISABEL O., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Affirmed in part, reversed in part, and remanded.

Patricia K. Saucier, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips and Paula J. Roach, Deputy County Counsel, for Plaintiff and Respondent.

Dependency Legal Group of San Diego, Tilisha Martin, Carolyn Levenberg and James Blackburn for Minor.

Isabel O. appeals juvenile court orders assuming jurisdiction and removing her son, A. G., from her custody under Welfare and Institutions Code[1] section 300, subdivision (g), which applies when a child has been left without any provision for support, and section 361, subdivision (c). Isabel argues her statutory and due process notice rights were violated, and the evidence was insufficient to support the court's exercise of dependency jurisdiction and A.G.'s removal from her custody. We conclude Isabel's statutory and due process notice rights were satisfied, and the court's finding that A.G. was a dependent child under section 300, subdivision (g), was supported by substantial evidence. However, because the juvenile court did not sufficiently consider whether alternative means existed to prevent A.G.'s removal from Isabel's custody, we reverse and remand for further proceedings in that regard.

FACTUAL AND PROCEDURAL BACKGROUND

In mid-June 2014, while en route to Tijuana, Mexico, with her two small children, Isabel went into premature labor. As a result, A.G. was born prematurely by approximately three months at a hospital in the San Diego area. When released from the hospital, Isabel returned to her home in Oxnard, California, where she lived with her mother. After A.G.'s birth, he remained in the hospital for almost seven weeks, and Isabel visited him only three times, apparently because of child care issues and limited

---

[1]     All further statutory references are to the Welfare and Institutions Code.

2

resources. Hospital staff reported they had significant difficulties in contacting Isabel for urgent and routine consents for medical treatment of her severely premature baby. The San Diego County Health and Human Services Agency's (Agency) notes reflected Isabel's last known address was in Oxnard, but the hospital thought she might be living in Tijuana. A.G.'s father lived in Mexico, was unable to legally enter the United States, and had no known contact information.

The hospital kept Isabel apprised of A.G.'s discharge time frame, and the hospital discharged A.G. on August 3, 2014; no one was there to receive him. After repeated attempts to contact Isabel and all known relatives, A.G. was relocated to Polinsky Children's Center. Two days later, the Agency filed a section 300 petition (petition) on A.G.'s behalf. That same day, Isabel contacted the Agency by pay phone, explaining that she was in Tijuana and wanted to get A.G., but had not expected a weekend hospital discharge. She indicated she was planning to move to Oceanside, California, to live with A.G.'s paternal grandmother. The Agency informed Isabel that a court hearing was set for the next day, and Isabel responded that she was not sure whether she could be there.

At the detention hearing, which Isabel did not attend, the court ordered A.G. to be detained and set a jurisdiction and disposition hearing for August 25, 2014. The next day, the court clerk sent the court's detention order to Isabel's Oxnard address via U.S. mail and sent the petition and a notice of hearing to Isabel's Oxnard address via certified mail, return receipt requested. The notice of hearing included the correct date, time and place of the hearing, along with other cautionary language, such as the following: "Your

3

parental rights may be permanently terminated.  To protect your rights, you must appear in Court and answer the petition."

On August 8, 2014, an Agency social worker visited Isabel in Oceanside at A.G.'s paternal grandmother's home.  The home appeared relatively clean, and there was sufficient space in Isabel's room for a crib.  Isabel had food and clothes for her other two children.  Although she was still missing a crib and baby supplies, Isabel planned to move those items from Oxnard to Oceanside.  Over the next several weeks, however, Isabel was still unable to acquire the necessary supplies, like diapers, formula, and clothes.  Isabel had not been employed since 2008, she received financial aid, and could not afford her own housing.  Further, Isabel was not making appropriate inquiries on how to handle A.G.'s medical issues, including a serious eye condition that could lead to blindness if untreated.

On August 25, 2014, the court held its jurisdictional and dispositional hearing. Again, Isabel was not present.  Based on the Agency's reports, the court found: (1) notice of the hearing had been given as required by law; (2) A.G. was a person described under section 300, subdivision (g); and (3) by clear and convincing evidence, A.G.'s removal from his mother's custody was necessary because there was a "substantial danger to the physical health of the child or the child is suffering severe emotional damage, and there are no reasonable means by which the child's physical or emotional health may be protected without removing the child . . . ."   (See § 361, subd. (c).)  The court also ordered Isabel to designate a permanent mailing address and phone number to be used for future notices.

DISCUSSION

I

*NOTICE OF THE JURISDICTION AND DISPOSITION HEARING*

Isabel first argues that the juvenile court violated her statutory and due process rights by not providing notice of the jurisdiction and disposition hearing. "[P]arents are entitled to due process notice of juvenile proceedings affecting their interest in custody of their children. [Citation.] And due process requires 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " (*In re Melinda J.* (1991) 234 Cal.App.3d 1413, 1418.)

To protect these rights, a child's parent is statutorily entitled to notice of a jurisdiction and disposition hearing by certified mail, return receipt requested, if the child is detained and the parent was not present at the initial petition hearing. (§ 291, subd. (e)(1).) When the child is detained, notice is required to be served at least five days before the hearing, and it must contain certain information, including the nature, date, time, and place, of the hearing. (§§ 291, subds. (c)(1)-(2), (d); see also *In re Wilford J.* (2005) 131 Cal.App.4th 742, 751 [finding that a generic "Notice of Hearing on Petition" could not have apprised parent of as-yet *unscheduled* jurisdictional hearing].)

Here, Isabel's statutory and due process rights were not violated. The court clerk timely served via certified mail, return receipt requested: (1) the petition, which alleged in detail the grounds on which A.G. was within the jurisdiction of the juvenile court, and (2) a notice of hearing, which advised that Isabel's parental rights may be permanently

5

terminated if she did not appear to answer the petition.  Together, these documents

conveyed the nature of the hearing.  Unlike *Wilford J.*, the jurisdictional and dispositional

hearing was scheduled, as reflected in the detention order also served on Isabel.

Furthermore, sending notice to Isabel's mother's Oxnard home was sufficient to satisfy

statutory requirements and reasonably calculated to apprise Isabel of the future hearings.

Isabel had been transient in preceding weeks, but Oxnard was her known permanent

address, the one she gave the hospital, and where she returned after A.G.'s birth; her

mother resided in Oxnard at all relevant times, and Isabel stated that she was continuing

to move items from Oxnard to Oceanside.  Isabel was provided the required notice of the

jurisdiction and disposition hearing.

II

*SUFFICIENCY OF THE EVIDENCE*

A.  Standard of Review

In reviewing the sufficiency of the evidence on appeal we consider the entire

record to determine whether substantial evidence supports the court's findings.  (*In re

Savannah M.* (2005) 131 Cal.App.4th 1387, 1393-1394.)  We do not assess the credibility

of witnesses, attempt to resolve conflicts in the evidence, or weigh the evidence.  Rather,

we draw all reasonable inferences in support of the findings, view the record favorably to

the juvenile court's order, and affirm the order even if other evidence supports a contrary

finding.  (*In re James R.* (2009) 176 Cal.App.4th 129, 135.)

Substantial evidence is not synonymous with any evidence.  (*In re Savannah M.*,

*supra,* 131 Cal.App.4th at p. 1393.)  "A decision supported by a mere scintilla of

6

evidence need not be affirmed on appeal." (*Ibid.*) Although substantial evidence may consist of inferences, those inferences must be products of logic and reason and must be based on the evidence. Inferences that are the result of mere speculation or conjecture cannot support a finding. The ultimate test is whether a reasonable trier of fact would make the challenged ruling considering the whole record. (*Id.* at pp. 1393-1394; *In re David M.* (2005) 134 Cal.App.4th 822, 828.)

At a jurisdictional hearing, the Agency bears the burden to establish by a preponderance of evidence that the minor is a person described by section 300. (§ 355, subd. (a); *In re Sheila B.* (1993) 19 Cal.App.4th 187, 198.) At a dispositional hearing, the burden of proof is substantially greater than at the jurisdictional phase if the minor is to be removed from his or her home. (*In re Henry V.* (2004) 119 Cal.App.4th 522, 528.) A heightened burden of proof on removal orders is appropriate in light of the " 'constitutionally protected rights of parents to the care, custody and management' " of their children. (*Id.* at p. 529.) In assessing an assignment of error on removal orders, " ' "the substantial evidence test applies to determine the existence of the clear and convincing standard of proof . . . ." ' " (*Ibid.*)

B. Sufficiency of Evidence to Support the Jurisdictional Finding

Isabel argues the evidence was insufficient to support the jurisdictional finding that A.G. was a child "left without any provision for support" under section 300, subdivision (g), because the evidence showed she was ready and willing to support him. In response, the Agency argues the evidence amply demonstrated Isabel's unavailability and inability to support A.G.'s needs at the time of hearing.

Section 300, subdivision (g), provides for juvenile court jurisdiction where a " 'child has been left without any provision for support.' " (*D.M. v. Superior Court* (2009) 173 Cal.App.4th 1117, 1128, 1129 [affirming the juvenile court's § 300, subd. (g) jurisdiction where the child was released from juvenile hall and parents' actions had " 'left [her] with no home and nowhere to go' "].) A parent's ability to provide care or support is analyzed at the time of the jurisdictional hearing, although evidence of a past inability to provide care or support is probative of the parent's current ability. (*E.g., In re J.O.* (2009) 178 Cal.App.4th 139, 154 [finding that "despite his professed 'interest' in obtaining custody," court could reasonably infer that parent was incapable of providing care to children based on past lack of financial support and interest].)

Here, substantial evidence supports the court's jurisdictional finding. The record shows A.G. was a severely premature infant with health issues, yet he was being left in the hospital for days (and weeks) at a time without parental contact, and the hospital was frequently unable to reach Isabel for important issues relating to his medical care. Critically, Isabel failed to arrange for A.G.'s receipt at hospital discharge, she was not ready to care for him, and no other family members were willing to do so. In August 2014, A.G. weighed just over four pounds, required round-the-clock care, and had a serious eye condition as a result of premature birth that, if untreated, could lead to blindness. Despite being advised about the severity of A.G.'s medical condition and the Agency's concerns in this regard, Isabel did not take appropriate initiative to locate doctors and set up appointments. We think the court could reasonably infer that A.G. had

8

been left without support and Isabel was not capable of supporting A.G. at the time of hearing.

Although Isabel argues she was merely unprepared for A.G.'s arrival and she had taken steps to get ready by the time of hearing, we must defer to the juvenile court to weigh evidence and draw reasonable inferences from the evidence. (See, e.g., *In re Sheila B., supra,* 19 Cal.App.4th at p. 199 ["an appellate court . . . has no power to judge the effect or value of, or to weigh the evidence"]; *In re Basilio T.* (1992) 4 Cal.App.4th 155, 169 [even though parent's arguments were not described in great detail, it was reasonable to infer the children were at substantial risk of serious physical harm based on nature of home environment].) There is substantial evidence to support the jurisdictional findings.

C. <u>Sufficiency of Evidence to Support Removal</u>

Isabel next argues that even were A.G. properly found to be a juvenile dependent, the court erred in removing him from her care because there was not clear and convincing evidence his health was in substantial danger if returned home and the court did not consider reasonable means to avoid removal. The Agency concedes the evidence did not sufficiently support a finding there were no reasonable alternatives to removing A.G. from Isabel's custody.

To support removal of a child from parental custody, the Agency must establish the circumstances set forth in one of the subsections of section 361, subdivision (c), by clear and convincing evidence. Because of a parent's fundamental right to retain custody of his or her child, removal is limited to "extreme cases of parental abuse or neglect." (*In*

9

*re James T.* (1987) 190 Cal.App.3d 58, 65 [alternative, less drastic measures, to removal from custody should have been considered where "circumstances were far from urgent"].) One ground for removal is when "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor . . . ." (§ 361, subd. (c)(1); see *In re Jeannette S.* (1979) 94 Cal.App.3d 52, 60 [where five-year-old was residing in filthy conditions and sometimes left without food, reasonable alternatives to removal existed, including returning "Jeannette to her mother under stringent conditions of supervision"].)

In this case, the Agency's concerns stemmed from A.G.'s serious medical condition and his small size. Given A.G.'s premature development, consistent medical care was important, and Isabel had shown occasional indifference. However, by the time of hearing, circumstances were not urgent. Isabel had obtained a crib for A.G., and she was adequately caring for her other two children. The Agency assisted Isabel with locating suitable doctors in the area, and she had received public transportation passes to get to medical appointments. The court stated Isabel "need[ed] a jump-start of some kind." Based on the foregoing, the juvenile court should have considered less drastic alternatives, such as strict supervision over Isabel's custody. (*See In re Steve W.* (1990) 217 Cal.App.3d 10, 23 [trial court has the ability to provide stringent conditions of supervision and close monitoring of the minor].) The court's finding that no reasonable means existed to protect A.G.'s health other than removal from Isabel's custody was not

10

supported by clear and convincing evidence.  We reverse and remand for a new dispositional hearing.

## DISPOSITION

The jurisdictional order is affirmed. The dispositional order is reversed and the case is remanded for another dispositional hearing.

McDONALD, Acting P. J.

WE CONCUR:

AARON, J.

IRION, J.

11