Filed 10/26/15  In re Christopher E. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re CHRISTOPHER E., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D068290 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SJ11763B) |
| WILLIAM E., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Sharon L. Kalemkiarian, Judge.  Affirmed.

Neil R. Trop, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Paula J. Roach, Deputy County Counsel, for Plaintiff and Respondent.

William E. appeals a judgment terminating his reunification services with his child, Christopher E., following a review hearing under Welfare and Institutions Code section 366.22, subdivision (e).[1] William contends that he was denied due process because the San Diego County Health and Human Services Agency (the Agency) failed to provide adequate notice of the six-month review hearing. He also contends that the Agency failed to exercise due diligence in trying to locate him. We affirm.

FACTUAL AND PROCEDURAL SUMMARY

The Agency removed 13-year-old Christopher and his five half siblings from their home on September 16, 2014, and filed a section 300 petition after finding drugs, drug paraphernalia, and a nonregistered gun accessible to the children. Christopher had been living with the paternal grandparents of his five half siblings. The father of his half siblings, Matthew M., had recently been arrested for robbery and had a history of using and selling drugs. Christopher's father, William, was incarcerated in Blythe, California. The Agency served its Detention Report on William at that location, and William was represented by court-appointed counsel at the September 17 detention hearing.

The court held a jurisdictional hearing on October 22, 2014. The Agency filed a report stating that it had not made contact with William. William's attorney informed the court that she had sent William a copy of the Agency's petition and explained the process to him in writing. William had told his attorney that he would be paroled prior to

_____

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

2

October 22 and would not attend the hearing. William's attorney filed three forms executed by her client: a disclaimer of Indian status, a request for counsel, and a parentage inquiry questionnaire. These are William's only submissions to the juvenile court to date. William's request for counsel form provided a mailing address on Moonmist Drive in Houston, Texas (hereafter, the Moonmist address). William initialed next to line 6: "I understand that I must promptly notify the court in writing of any change in my address or phone number. I understand that the court will send all notices and orders only to the last address I have provided to the court." William never provided an alternate address to the court or the Agency.

During the October 22 hearing, William's attorney told the court that the Moonmist address likely belonged to William's parents. She explained that she had spoken with William's family and asked them to have William contact her with any alternate mailing information. The court designated the Moonmist address as William's mailing address, noting that it belonged to William's family. The clerk mailed the Agency's petition and the court's minute order to the Moonmist address.

William did not attend the settlement conference on October 30, 2014, but he was represented by counsel. The court determined William to be Christopher's presumed father based on a 2007 judgment in family court. The clerk mailed the minute order to the Moonmist address.

William did not attend the contested disposition hearing on November 12, 2014, but was represented by counsel. William's attorney informed the court that she had left a message for William, asking him to contact the Agency. She stated that William had

called to tell her that his relatives could take care of Christopher if there were no placement options. The court ordered reunification services for William, for Christopher's mother, and for Matthew.

On April 24, 2015, the Agency filed a Status Review Report, which noted that it had been unable to contact William. The Agency had sent a letter to William's last known address and attempted to call him on November 24, December 10, January 18, February 23, March 19, and April 22. It had conducted an unsuccessful parent search and discovered a recent felony warrant for William in California. The Status Review Report incorporated a Declaration of Due Diligence by the social worker documenting results from 17 search queries, including the Department of Motor Vehicles, state and federal prisons, state medical assistance and child support records, and the U.S. Postal Service.

On May 5, 2015, the court held a six-month review hearing pursuant to section 366.21, subdivision (e). The Agency filed a section 388 petition, seeking to modify the court's November 12 order and terminate William's reunification services. In the petition, the Agency stated that William had not tried to contact the Agency or provide the Agency with contact information. Noting that William did not have a relationship with Christopher and had not tried to contact him, the Agency recommended termination of William's reunification services.

William did not attend the six-month review hearing but was represented by counsel. William's attorney opposed the Agency's section 388 petition but presented no evidence. She told the court that she had lost contact with William and lacked means to reach him. The court concluded that despite due diligence, William could not be located.

4

The court granted the Agency's section 388 petition, terminated William's reunification services, and relieved William's attorney.

The court also addressed paternity at the six-month review hearing. The court reviewed parentage questionnaires filed by William, Matthew, and Christopher's mother. The court elevated Matthew as Christopher's presumed father under Family Code section 7611, subdivision (d). William's attorney objected but presented no evidence. She confirmed that she had told William early in the case that another person sought to be elevated as Christopher's presumed father. The court then weighed the claims of Matthew and William under Family Code section 7612. The court determined that Matthew had the stronger claim as Christopher's father. The clerk mailed the May 5, 2015, minute order to the Moonmist address.

William's attorney filed a timely notice of appeal. Counsel for Christopher filed a letter brief with this Court on October 5, 2015, joining in the Agency's arguments.

DISCUSSION

On appeal, William contends that the Agency failed to provide sufficient notice of the six-month review hearing, at which his reunification services were terminated. He also contends that the Agency failed to use due diligence to locate him. As discussed below, we conclude that the Agency provided William with sufficient notice and exercised reasonable diligence in trying to locate him.[2]

---

2    The Agency argues that William has waived the due process argument on appeal by failing to object below. "In dependency litigation, nonjurisdictional issues must be the subject of objection or appropriate motions in the juvenile court; otherwise those

5

# I

## NOTICE REQUIREMENTS

"Parents have a fundamental and compelling interest in the companionship, care, custody, and management of their children." (*In re DeJohn B.* (2000) 84 Cal.App.4th 100, 106 (*DeJohn B.*).) "Notice is both a constitutional right and statutory imperative." (*In re Jasmine G.* (2005) 127 Cal.App.4th 1109, 1114 (*Jasmine G.*).) Section 366.21, subdivision (b) requires notice of six-month review hearings pursuant to section 293, except under circumstances not relevant here. In turn, section 293 specifies the required contents of the notice, proper recipients, and the time and manner of service. (§ 366.21, subd. (b); § 293, subds. (a), (c), (d), (e).)

Beyond statutory requirements, "parents are entitled to due process notice of juvenile proceedings affecting their interest in custody of their children. [Citation.] And due process [notice] requires 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " (*In re Melinda J.* (1991) 234 Cal.App.3d 1413, 1418 (*Melinda J.*).) " '[I]n the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no

arguments have been waived and may not be raised for the first time on appeal." (*In re Christopher B.* (1996) 43 Cal.App.4th 551, 558.) William's attorney appeared at the six-month review hearing and did not object to the adequacy of notice or file a section 388 petition to raise a due process challenge. (*See In re Justice P.* (2004) 123 Cal.App.4th 181, 189 (*Justice P.*) ["A section 388 motion is a proper vehicle to raise a due process challenge based on lack of notice."].) Nevertheless, because William's attorney lodged a general objection on William's behalf, we will address the merits of William's due process challenge on appeal.

constitutional bar to a final decree foreclosing their rights.' " (*Id.* at p. 1419 [citing *Mullane v. Central Hanover Bank & Trust Co.* (1950) 339 U.S. 306, 317 (*Mullane*)].)

"If the whereabouts of a parent are unknown, the issue becomes whether due diligence was used to locate the parent." (*In re Claudia S.* (2005) 131 Cal.App.4th 236, 247 (*Claudia S.*).) "The term 'reasonable or due diligence' ' 'denotes a thorough, systematic investigation and inquiry conducted in good faith.' ' [Citation.] Due process notice requirements are deemed satisfied where a parent cannot be located despite a reasonable search effort and the failure to give actual notice will not render the proceedings invalid." (*Ibid.*) "[T]here is no due process violation when there has been a good faith attempt to provide notice to a parent who is transient and whose whereabouts are unknown for the majority of the proceedings." (*Justice P.*, *supra*, 123 Cal.App.4th 181, 188.)

Finally, "[w]hile there can be no dispute that due process prohibits courts from interfering with parental rights without adequate notice, dependency procedures and statutory notice requirements are based on the principle that parents can be expected to exert some effort to keep apprised of their children and their welfare." (*In re Jennifer O.* (2010) 184 Cal.App.4th 539, 549 (*Jennifer O.*).) "The Department has a duty initially to make a good faith attempt to locate the parents of a dependent child. Once a parent has been located, it becomes the obligation of the parent to communicate with the Department and participate in the reunification process." (*In re Raymond R.* (1994) 26 Cal.App.4th 436, 441 (*Raymond R.*) [rejecting contention that Agency should have searched for father every six months].)

7

Applying this standard, courts have found a due process violation where the Agency took no efforts to attempt to notify a parent of dependency proceedings. (*See Jasmine G.*, *supra*, 127 Cal.App.4th at p. 1116 [Agency "made no attempt, *absolutely none*, to even *look* for [the parent]"]; *DeJohn B.*, *supra*, 84 Cal.App.4th at pp. 108-110 [Agency " 'never did the obvious' " and "fail[ed] even to make an effort to provide mother the procedural safeguard of notice"].)  By contrast, courts have found no due process violation where the Agency took reasonable steps to notify a parent. (*See Melinda J.*, *supra*, 234 Cal.App.3d at p. 1419 [Agency "made sincere and extensive efforts to locate [the parent]; even with the benefit of hindsight, we see nothing else that should have been done"]; *Claudia S.*, *supra*, 131 Cal.App.4th at p. 249 ["this case did not involve a total lack of effort on the part of the Agency to notice the parents . . . there is nothing more the Agency could have done to notify the parents of the proceedings"].)

II

STANDARD OF REVIEW

We review constitutional issues de novo.  (*In re J.H.* (2007) 158 Cal.App.4th 174, 183 (*J.H.*).)  "[E]rrors in notice do not automatically require reversal but are subject to the harmless beyond a reasonable doubt standard of prejudice."  (*Ibid.*; see *In re A.D.*

(2011) 196 Cal.App.4th 1319, 1325 (*A.D.*).)[3] For William to prevail on appeal, he must show that "a more favorable result was likely absent the error." (*A.D.*, at p. 1325 [lack of notice of 12-month review hearing constituted harmless error]; see *J.H.*, at p. 185 [lack of notice of jurisdiction and disposition hearing constituted harmless error].)

III

ANALYSIS

Prior to the six-month review hearing, the Agency prepared a Status Review Report. This Report satisfies nearly all of the statutory notice requirements for dependency review hearings under California law. Consistent with subdivisions (a) and (e) of section 293, the Agency sent the Status Review Report to William, the presumed father, at his last known address by first-class mail. (§ 293, subds.(a), (e).) It did so on April 14, 2015, 21 days before the six-month review hearing, consistent with

---

3       Some courts have held that a failure to provide notice of review hearings constitutes "structural error," and is therefore reversible per se. *DeJohn B.* held that the Agency's failure to attempt to locate a mother and provide her with notice of the six-month review hearing where reunification services were terminated mandated reversal. (*DeJohn B.*, *supra*, 84 Cal.App.4th at p. 110.) Citing *DeJohn B.*, the panel in *Jasmine G.* held that the Agency's failure to notify the mother of a selection and implementation hearing where her parental rights were terminated was reversible per se. (*Jasmine G.*, *supra*, 127 Cal.App.4th at pp. 1116, 1118.) Likewise, in *Judith P. v. Superior Court* (2002) 102 Cal.App.4th 535, the court held that the Agency's failure to serve the mother with a copy of the social worker's report before the twelve-month review hearing at which her reunification services were terminated constituted structural error, reversible per se. (*Id.* at p. 558.) However, in 2008, our Supreme Court applied the harmless error standard to a distinct due process challenge and cautioned against use of the structural error doctrine in dependency cases. (*In re James F.* (2008) 42 Cal.4th 901, 915.) Analyzing *In re James F.*, the court in *A.D.* applied the harmless error standard to evaluate the Agency's alleged failure to provide notice of the twelve-month review hearing. (*A.D.*, *supra*, 196 Cal.App.4th at p. 1327.)

subdivision (c). (§ 293, subd. (c).) Consistent with subdivision (d), the Status Review Report stated that the next hearing would be the six-month review hearing on May 5, 2015, and it included the Agency's recommendation to terminate William's reunification services. (§ 293, subd. (d).)

Due process does not require actual notice, but instead "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (*Mullane*, *supra*, 339 U.S. at p. 314; *see Evans v. Dept. of Motor Vehicles* (1994) 21 Cal.App.4th 958, 967 ["*Mullane* makes it clear that due process of law does not require actual notice, but only a method reasonably certain to accomplish that end."].) We conclude that the Agency's service of its Status Review Report by first-class mail to William's last known address on April 14, 2015 met that standard.

The Status Review Report did not reference William's right to be present at the hearing, his right to be represented by counsel, or his right to present evidence, all of which are required under section 293. (§ 293, subd. (d).) It also did not state that the court could proceed in William's absence. (*Ibid.*) However, as discussed below, we conclude the Agency's lack of strict compliance with section 293, subdivision (d) was harmless beyond a reasonable doubt. (*Cf. Melinda J.*, *supra*, 234 Cal.App.3d at p. 1419 [lack of strict compliance with statutory requirements for timing of notice, in the absence of prejudice, was not grounds for reversal].)

William was represented by counsel throughout the dependency proceedings. His attorney appeared and objected on his behalf at the six-month review hearing on

10

May 5, 2015, and had the opportunity to present evidence. William learned about Christopher's dependency proceedings in September 2014 and filed documents shortly thereafter requesting counsel, attesting to his parentage, and disclaiming Indian status. Other than filing these three documents, William made no effort to participate in the dependency proceedings. He "did nothing to secure his custodial rights, and failed to keep [the Agency] informed of his whereabouts." (*Jennifer O.*, *supra*, 184 Cal.App.4th at p. 550.)

William contacted his attorney before the November 2014 hearing, and his attorney gave him the social worker's name and phone number, instructing him to call. The Agency called William six times at his last known phone number between November 24, 2014, and April 22, 2015. Yet, at no time did William try to contact the Agency or visit Christopher. The Agency was unable to establish a case plan for William, and William never tried to avail of his court-ordered reunification services. (*Cf. Raymond R.*, *supra*, 26 Cal.App.4th at p. 441 [Agency was not required "to track [father] continually throughout the dependency process even after he has been identified, contacted by a social worker, apprised of the proceedings, provided with counsel, and participated in hearings."].) On this record, there is no indication that strict compliance with section 293, subdivision (d) would have changed the outcome. (*Melinda J.*, *supra*, 234 Cal.App.3d at p. 1419; see *A.D.*, *supra*, 196 Cal.App.4th at p.1327 [failure to notify mother of twelve-month review hearing was harmless given her failure "to participate meaningfully in her case plan or maintain contact with the social worker"]; *J.H.*, *supra*, 158 Cal.App.4th at p. 185 [lack of notice of jurisdiction and disposition hearing was

11

harmless where "Father knew about the dependency proceedings at some point and chose not to contact [the Agency] and not to attempt to obtain custody of J.H."].).

William argues that there is no evidence that the Agency actually sent the Status Review Report to the Moonmist address by first-class mail, despite the Report claiming to have done so. He contends that the record does not contain a proof of service pursuant to sections 1013 and 1013a of the Code of Civil Procedure. However, under Evidence Code section 664, "[i]t is presumed that official duty has been regularly performed." Absent some indication in the record that the Agency did not send the Report to the Moonmist address by first-class mail, there is no basis to overcome the presumption. (See, e.g., *In re Elizabeth W.* (2004) 120 Cal.App.4th 900, 907 ["error will not be presumed" where "the record shows . . . the *only* omission is the failure to file a proof of service establishing that the notice and a copy of the petition were sent by certified mail"].)

William also argues that the Agency did not use due diligence in trying to locate and notify him. He suggests that the Agency should have searched Texas agencies because his last known address was in Houston, Texas. We disagree.

The record reflects that the Agency sent the Status Review Report to the Moonmist address, William's last known address, on April 14, 2015. This alone might have sufficed. William provided the Moonmist address to the court and certified that this was where notices should be sent. The court identified the Moonmist address as William's address of record and sent minute orders to this location. At no point during the dependency proceedings did William object to the use of the Moonmist address, and

12

the record does not suggest that any mail sent to that address returned to the court or to the Agency undelivered. In fact, William's Notice of Appeal lists the Moonmist address, suggesting that it remains his last known address.

Nevertheless, the Agency did not stop there. William's attorney and the court identified the Moonmist address as belonging to William's family. The Agency therefore did a parent search, running 17 search queries of California and federal records. The Child Support Division indicated that William had lived at the Moonmist address in 2011 but no longer lived there. Four of the 17 searches, including records from the Department of Motor Vehicles, linked William more recently to an address in Chula Vista, California. The Sherriff's Department issued a felony arrest warrant for William on October 28, 2014, listing the Chula Vista address. The Agency sent a certified letter to William at the Chula Vista address (apart from its mailing to the Moonmist address), and someone signed for it. We find no basis to conclude that a public records search in Texas was required.

In addition to the parent search, the Agency tried to call William at his last known number six times, on November 24, December 10, January 18, February 23, March 19, and April 22. Here, as in *Melinda J.*, the Agency took "sincere and extensive" efforts to locate William, who by that point had lost contact with his own attorney. (*Melinda J.*,

*supra*, 234 Cal.App.3d at p. 1419.)  "[E]ven with the benefit of hindsight, we see nothing else that should have been done."  (*Ibid.*)[4]

William has been an absentee father for nearly all of Christopher's life.  He knew about the dependency proceedings and had every opportunity to secure his custodial rights.  We conclude that the Agency exercised due diligence in trying to locate William, and its notice to William of the six-month review hearing met due process.

DISPOSITION

The judgment is affirmed.


BENKE, Acting P. J.

WE CONCUR:


NARES, J.


PRAGER, J.[*]

---

[4]     William cites three cases in which the Agency failed to take any steps to locate an alleged father, but those cases are readily distinguishable from the Agency's reasonable efforts here.  (*See In re Julia U.* (1998) 64 Cal.App.4th 532, 542-543 [no due diligence where Agency took no action to locate an alleged father for two months after being informed of his identity]; *David B. v. Superior Court* (1994) 21 Cal.App.4th 1010, 1016 [no due diligence where Agency identified, but failed to contact, an alleged father's employer]; *In re O.S.* (2002) 102 Cal.App.4th 1402, 1409 [no due diligence where Agency failed to perform a parent search and took no steps to locate an alleged father].)

[*]     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.